# Illinois Official Reports

## Appellate Court

---

### *Kowal v. Westchester Wheels, Inc.*, 2017 IL App (1st) 152293

---

| | |
|---|---|
| Appellate Court Caption | JANET KOWAL, Plaintiff-Appellee, v. WESTCHESTER WHEELS, INC., an Illinois Corporation, GIANT BICYCLE, INC., a Virginia Corporation, HARTLEY'S CYCLE SHOPPE, an Illinois Corporation, and GIANT MANUFACTURING COMPANY, LTD., a Taiwan Corporation, Defendants (Giant Manufacturing Company, Ltd., a Taiwan Corporation, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2293 |
| Filed | September 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2013-L-13309; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew J. Egan, Donald P. Eckler, and Scott L. Howie, of Pretzel & Stouffer Chtrd., of Chicago, for appellant.<br><br>Kenneth Hoffman and J. Wesley Mitchell, of Mitchell Hoffman & Wolf LLC, of Chicago, for appellee. |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justice Lampkin concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.


**OPINION**

¶ 1    Defendant-appellant Giant Manufacturing Company, Ltd. (Giant Manufacturing), a Taiwanese corporation, brings this appeal under Illinois Supreme Court Rule 306(a)(3) from an order of the circuit court of Cook County, denying its motion to dismiss a complaint filed by plaintiff Janet Kowal for lack of personal jurisdiction. Ill. S. Ct. R. 306(a)(3) (eff. Feb. 16, 2011). Plaintiff is a resident of Cook County, Illinois. She filed a complaint against Giant Manufacturing in the circuit court of Cook County, seeking relief for injuries she sustained as a result of an alleged defect in a bicycle manufactured by defendant-appellant. On appeal, Giant Manufacturing argues that the trial court erred in denying its motion to dismiss because (1) it is not subject to personal jurisdiction in Illinois under the stream-of-commerce theory and (2) the exercise of personal jurisdiction does not comport with due process. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The record on appeal discloses the following facts.[1] Plaintiff filed a four-count complaint against Giant Manufacturing, Giant Bicycle, Inc. (Giant Bicycle), Westchester Wheels, Inc. (Westchester), and Hartley's Cycle Shoppe (Hartley's). The complaint alleged counts for negligence, strict liability, and breach of express warranty. Specifically, the complaint alleged that Giant Manufacturing, a Taiwanese corporation, manufactured Giant brand bicycles and distributed the bicycles in the United States exclusively through Giant Bicycle, a Virginia corporation. Meanwhile, plaintiff purchased a 2007 Giant brand bicycle from Westchester, an Illinois corporation and authorized retailer of Giant brand bicycles. Plaintiff then took the bicycle to Hartley's, an Illinois corporation and authorized retailer of Giant brand bicycles, for a tune-up and inspection in preparation for a 468-mile bicycle ride event. A few weeks later, the carbon fiber front fork of the bicycle broke and led to plaintiff's fall and injuries during the event in Iowa.

¶ 4    Thereafter, Giant Manufacturing and Giant Bicycle were notified through service to the Illinois Secretary of State.[2] Giant Manufacturing then filed a motion to quash service of summons pursuant to section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301(a) (West 2014)), arguing (1) it is not registered with the Illinois Secretary of State as authorized to do business in Illinois and therefore, service upon the Secretary of State is not valid under section 5.25 of the Business Corporation Act of 1983 (805 ILCS 5/5.25(a) (West 2014)), and (2) it has not transacted business in Illinois, so that service of process upon it through the

---

[1]As the parties treat the "Supporting Record" in the interlocutory appeal as the record, we will also treat it as the record on appeal.

[2]Giant Manufacturing is the only appellant in this appeal.

Secretary of State is not valid under section 5.30 of the Business Corporation Act (805 ILCS 5/5.30 (West 2014)).

¶ 5    In support of its motion to quash, Giant Manufacturing included an affidavit of its chief financial officer (CFO), Bonnie Tu. In her affidavit, Tu attested she was employed as CFO with Giant Manufacturing for the last 21 years. She averred that Giant Manufacturing is a Taiwanese corporation with its principal place of business in Taiwan. Tu also claimed Giant Manufacturing had never sought authorization from the Illinois Secretary of State to conduct business in Illinois and had never negotiated, performed, or entered into any contracts in Illinois. She further averred that Giant Manufacturing has never shipped any products to Illinois and never maintained any offices, employees, registered agents, or bank accounts in Illinois. Tu alleged that Giant Manufacturing has never advertised in Illinois and never solicited business from or transacted business with an Illinois resident or corporation. In addition, she averred that Giant Manufacturing has never paid any incomes taxes in Illinois or filed any returns in this state.

¶ 6    Giant Manufacturing subsequently answered interrogatories limited to the issue of personal jurisdiction (initial answer). In its initial answer, the company acknowledged that while Tu was employed as its CFO since 1993, she was also a director at Giant Bicycle since 1994. Furthermore, Young Liu, a director with Giant Manufacturing since 1997, was also a director at Giant Bicycle since 1987. Giant Manufacturing stated in its answers to interrogatories that it designs, manufactures, and sells bicycles and bicycle components but does not sell bicycles directly to the public. Rather, Giant Bicycle is the exclusive distributor of Giant brand bicycles in the United States. Giant Manufacturing represented that Giant Bicycle is not its wholly-owned subsidiary. Giant Manufacturing further acknowledged that in 1988, "Giant brand bicycles were first sold in Illinois." It also stated that Westchester was authorized in 2006 and Hartley's was authorized in 2013 by Giant Bicycle to sell and service Giant brand bicycles.

¶ 7    In response to Giant Manufacturing's motion to quash, plaintiff asserted that personal jurisdiction existed under the Illinois long-arm statute (735 ILCS 5/2-209(a)(1) (West 2014)) because the company "is doing business within" Illinois through its subsidiary, Giant Bicycle. In support of its motion, plaintiff attached printouts of advertisements posted on the Internet on July 22, 2014, by dealers and retailers for Giant brand bicycles in Illinois. Plaintiff also attached a printout of a map from Giant Bicycle's public Internet website, which demonstrated that on July 23, 2014, approximately 40 "Giant Authorized Dealers" were present in Illinois. The printout of the website also states that Giant brand bicycles are "sold exclusively through Giant Authorized Dealers." In addition, plaintiff attached a copy of an advertisement for Giant brand bicycles in a magazine that the plaintiff's attorney purchased at a newsstand in Chicago, Illinois. Plaintiff also attached the National Bicycle Dealers Association's estimated statistics, that in 2012, approximately 312,000 Giant brand bicycles were sold in the United States, 13% of the specialty bicycle market share nationwide.

¶ 8    Thereafter, Giant Manufacturing submitted supplemental answers to plaintiff's jurisdictional interrogatories, in which it added to and modified its initial answer. Unlike in its initial answer, Giant Manufacturing claimed it did not know which retailers in Illinois are authorized to sell Giant brand bicycles. Further, while it had previously answered that Westchester was authorized by Giant Bicycle to sell Giant brand bicycles in 2006, Giant

- 3 -

Manufacturing now stated it did not have this information. It indicated it had never been a party to a contract with Westchester. While maintaining its previous answer that Hartley's was authorized by Giant Bicycles to sell Giant brand bicycles in 2013, Giant Manufacturing answered it had never been a party to a contract with Hartley's either. Giant Manufacturing stated it does not instruct Giant Bicycle where to distribute or sell Giant brand bicycles in the United States. Giant Manufacturing does not take part in authorizing retailers in Illinois to sell Giant brand bicycles. Giant Bicycle determines which retailers it chooses to do business with in Illinois, and the terms of its business relationship with each of those retailers. While Giant Bicycle shipped Giant brand bicycles to certain retailers in Illinois from 2005 to 2009, Giant Manufacturing has no information regarding the number of Giant brand bicycles sold or distributed to retailers in Illinois by Giant Bicycle during that period of time. In addition, Giant Manufacturing stated that its net profit from 2007 through 2013 was distributed to its shareholders, none of whom included Giant Bicycle or any Illinois resident or corporation. Giant Manufacturing also alleged that at the time plaintiff's Giant brand bicycle was manufactured, there was no formal agreement between Giant Manufacturing and Giant Bicycle for the distribution or sale of Giant brand bicycles in the United States. Giant Manufacturing, however, acknowledged it was informed that Giant Bicycle entered into agreements at various times with certain retailers in Illinois for the sale of Giant brand bicycles. Giant Manufacturing "first became aware that Giant brand bicycles were *** sold in Illinois by authorized retailers or dealers" in 1988. In addition, Giant Bicycle maintains a distribution warehouse in Elgin, Illinois, and employs individuals who work in the warehouse.

¶ 9    Later, in Giant Manufacturing's answers to plaintiff's second set of jurisdictional interrogatories, the company acknowledged that Giant Bicycle is a wholly-owned subsidiary of Gaiwin B.V. and that Gaiwin B.V. is a wholly-owned subsidiary of Giant Manufacturing.

¶ 10    After the matter was fully briefed and argued, the trial court denied Giant Manufacturing's motion to quash. In denying the motion, the trial court initially noted that Giant Manufacturing did not have the continuous and systematic contacts with Illinois to establish general jurisdiction. The trial court, however, went on to find that Giant Manufacturing had sufficient minimum contacts with Illinois to establish specific jurisdiction under the Illinois long-arm statute, and thus service was proper. Giant Manufacturing filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (Ill. S. Ct. R. 306(a)(3) (eff. Feb. 16, 2011)), seeking leave from this court to appeal the denial of the motion to quash. This court initially denied Giant Manufacturing's motion but the supreme court subsequently entered a supervisory order, directing this court to vacate our decision and grant defendant leave to appeal. *Kowal v. Westchester Wheels, Inc.*, No. 119993 (Ill. Jan. 20, 2016) (supervisory order). Having now granted Giant Manufacturing's petition and reviewed its contentions on the merits, we affirm the trial court's denial of the motion to quash.

¶ 11                                                    II. ANALYSIS

¶ 12    On appeal, Giant Manufacturing argues that the trial court erred in denying its motion to dismiss because (1) it is not subject to personal jurisdiction in Illinois under the stream-of-commerce theory and (2) the exercise of personal jurisdiction over it does not comport with due process.

¶ 13    In response, plaintiff argues that Giant Manufacturing is subject to personal jurisdiction in Illinois because (1) it intentionally placed its bicycles into United States' stream of commerce, knowing they would be sold in Illinois; (2) its use of its "subsidiary," Giant Bicycle, to introduce defendant's bicycles to the Illinois market suffices for the exercise of personal jurisdiction in Illinois; and (3) it is reasonable for Illinois to exercise jurisdiction over defendant.

¶ 14    Generally, it is the plaintiff's burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant. *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 28. On appeal, any conflict between the pleadings and affidavits must be resolved in the plaintiff's favor. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. However, a plaintiff's *prima facie* case may be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. *Id.* Where, as here, the circuit court determines the issue of personal jurisdiction solely on documentary evidence without an evidentiary hearing, our review is *de novo*. *Id.* Under *de novo* review, we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Given this court's independent review, we may affirm on any basis that is supported by the record, regardless of whether that basis was the reason for the circuit court's judgment. *Hess v. Flores*, 408 Ill. App. 3d 631, 636 (2011).

¶ 15                    A. Applicable Statutory and Constitutional Provisions

¶ 16    Having set forth our standard of review, we turn to the legal principles applicable to our determination of whether the courts of this state have personal jurisdiction over Giant Manufacturing. Under section 2-209 of the Code of Civil Procedure, commonly referred to as the Illinois long-arm statute, an Illinois court can exercise personal jurisdiction over a nonresident defendant. 735 ILCS 5/2-209(a) (West 2014). The Illinois long-arm statute contains a "catch-all provision" which permits Illinois courts to exercise personal jurisdiction to the full extent allowed by the state and federal constitutions. 735 ILCS 5/2-209(c) (West 2014); *Russell*, 2013 IL 113909, ¶ 30. Thus, "if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary." (Internal quotation marks omitted.) *Cardenas*, 2012 IL App (1st) 111645, ¶ 29.

¶ 17    While our supreme court has instructed us to consider the Illinois long-arm statute separately from federal due process standards (*Rollins v. Ellwood*, 141 Ill. 2d 244, 271 (1990)), it is generally true that Illinois due process concerns regarding personal jurisdiction are satisfied when its federal counterpart is satisfied. *Russell*, 2013 IL 113909, ¶ 32; *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 44. In the case at bar, neither party contends the Illinois due process analysis here is different from the due process analysis under our federal constitution. We, therefore, need only consider the relevant federal due process concerns. *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 13. Under a federal due process analysis, courts are required to consider whether (1) the nonresident defendant had minimum contacts with the forum state such that the defendant was fairly warned that it may be haled into court there, (2) the action arose out of or was related to the defendant's contacts with the forum state, and (3) it is reasonable to require the defendant to litigate in the forum state. *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 22.

## B. Minimum Contacts

Giant Manufacturing claims it does not have sufficient minimum contacts with Illinois for our courts to exercise personal jurisdiction because (1) there is no evidence that it did anything more than to place its bicycles in the international stream of commerce and (2) there is no evidence that it knew that its bicycles would enter Illinois.

Pursuant to federal due process standards, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit [in that forum] does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, when the defendant has certain minimum contacts, his "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Those minimum contacts must also be based on "some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This requirement exists so that a nonresident defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or some other third person. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In addition, in determining whether the minimum contacts test has been satisfied, we consider whether the forum asserts general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists when the minimum contacts requirement has been satisfied by the defendant's " 'continuous and systematic' " contacts with the forum state as to render them essentially at home in the forum state. *Id.* Specific jurisdiction exists when the defendant has " 'purposefully directed' " his activities at the forum state and the action directly arose out of or are related to the contacts between the defendant and the forum. *Burger King Corp.*, 471 U.S. at 472. Here, plaintiff does not argue that general jurisdiction applies, and thus we limit our review to specific jurisdiction.

One way to satisfy the requirements for specific jurisdiction is under the stream-of-commerce theory, which the United States Supreme Court first discussed in *World-Wide Volkswagen*, 444 U.S. 286. In that decision, the Supreme Court concluded that a forum state is allowed to exercise personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98. The Supreme Court explained that it is not unreasonable to subject a nonresident to suit in a forum state, if the sale of a nonresident defendant's product is not simply an isolated transaction but arises from the efforts of the nonresident defendant to serve the forum state. *Id.* (Oklahoma state court could not exercise personal jurisdiction over a nonresident automobile retailer and its distributor where their only connection with Oklahoma was that a buyer in New York had taken their automobile to Oklahoma where the accident occurred).

Thereafter, the United States Supreme Court addressed the stream-of-commerce theory again in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987). In that case, a Japanese manufacturer Asahi was aware that the components it manufactured,

sold, and delivered to a Taiwanese manufacturer were being sold in California. *Id.* at 107. Asahi, however, took no other action specifically directed at the forum state. *Id.* at 112-13 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). Based on these facts, the Court unanimously held that California could not exercise personal jurisdiction over Asahi because it would be unreasonable. *Id.* at 113. The Court, however, was split on the separate issue of whether sufficient minimum contacts with California had been established and issued three separate opinions. *Id.* at 116 (Brennan, J., specially concurring, joined by White, Marshall, and Blackmun, JJ.); 121 (Stevens, J., joined by White and Blackmun, JJ.)

¶ 24    Justice O'Connor and three other justices advanced the narrow stream-of-commerce theory, concluding that minimum contacts with a forum state requires "[a]dditional conduct" that is beyond merely placing products into the stream of commerce and knowing that the products will make their way into the forum state. *Id.* at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). The four justices explained that examples of additional conduct that indicate an intent or purpose to serve the market in the forum state include designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Id.* The four justices concluded that even if Asahi had been aware that its component parts would be incorporated into products sold in California, that knowledge alone did not establish that Asahi purposefully availed itself of the California market. *Id.* at 112-13.

¶ 25    Justice Brennan and three other justices adopted the broad stream-of-commerce theory. *Id.* at 117 (Brennan, J., specially concurring, joined by White, Marshall, and Blackmun, JJ.). Under this theory, the forum state can assert personal jurisdiction over a nonresident defendant as long as the defendant is involved in "the regular and anticipated flow of products from manufacture to distribution to retail sale" and is "aware that the final product is being marketed in the forum State," *i.e.*, the fairness-and-foreseeability test. *Id.* Based on this theory, the four justices concluded that Asahi's regular and extensive sales of component parts to a manufacturer it knew was making regular sales of a product in California was sufficient to establish minimum contacts for California. *Id.* at 121.

¶ 26    Justice Stevens, joined by two other justices who had joined Justice Brennan's concurring opinion, expressed no opinion as to whether the narrow or broad stream-of-commerce theory was correct. *Id.* at 121-22 (Stevens, J., joined by White and Blackmun, JJ.). He instead concluded that, even under the narrow version of the stream-of-commerce theory, the regular course of dealing that resulted in a large volume of Asahi's products going into California's market constituted minimum contacts. *Id.* at 122.

¶ 27    Following the decision in *Asahi*, the Illinois Supreme Court addressed the stream-of-commerce theory in *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144 (1988). In *Wiles*, our supreme court recognized the two competing standards for the stream-of-commerce theory presented in *Asahi* but declined to decide which approach is correct. *Id.* at 159-60. The *Wiles* court went on to determine, however, that under either interpretation of the theory, "it is clear that purposeful availment of the forum's market requires, at a *minimum*, that the alien defendant is '*aware* that the final product is being marketed in the forum State.'" (Emphases in original.) *Id.* at 160 (quoting *Asahi*, 480 U.S. at

117 (Brennan, J., specially concurring, joined by White, Marshall, and Blackmun, JJ.)). In applying this standard, the *Wiles* court found that the Japanese defendant in that case did not have the requisite minimum contacts with Illinois. *Id.* at 161.

¶ 28     In *Wiles*, an employee was injured while cleaning a machine at his employer's plant in Illinois. *Id.* at 147. The employee brought an action against the Japanese defendant that had sold the machine to the employer in Japan. *Id.* at 146-47. The *Wiles* court noted the record was "totally devoid" of any evidence that the Japanese defendant was aware that the employer intended to transport the machines it had purchased in Japan to Illinois, or that the employer had a facility in Illinois. *Id.* at 160. The *Wiles* court noted that, accordingly, the machines were brought into Illinois solely by the unilateral act of the employer. *Id.* The *Wiles* court also noted that a single isolated transaction had occurred between the Japanese defendant and the employer. *Id.* at 161. The *Wiles* court concluded that the mere presence of a product in a state, without more, is insufficient to subject a foreign manufacturer to the jurisdiction of the Illinois courts. *Id.*

¶ 29     Recently, in *J. McIntyre*, 564 U.S. 873, the United States Supreme Court revisited the stream-of-commerce theory. There, the plaintiff was injured at his workplace in New Jersey, while operating a machine manufactured by a defendant based in England. *Id.* at 878 . The defendant sold its products exclusively through an independent Ohio-based distributor to sell its products in the United States. *Id.* at 896 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.). The defendant did not have any control over the distributor. *Id.* at 878 (plurality opinion). The defendant's company officials attended trade shows in states other than New Jersey. *Id.* at 886. Further, the plaintiff's employer had purchased a single machine from the Ohio-based distributor. *Id.* at 888. Moreover, defendant did not have a single contact with New Jersey, short of the machine in question that caused the accident. *Id.* at 886. In light of these facts, six justices of the *J. McIntyre* court held that the New Jersey court could not exercise specific personal jurisdiction over the defendant. *Id.* at 887-88. The six justices, however, did not agree on the application of the stream-of-commerce theory. *Id.* at 893 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.).

¶ 30     A plurality advanced by Justice Kennedy rejected the broad stream-of-commerce theory's fairness-and-foreseeability test. *Id.* at 883. The plurality stated that a forum state may exercise jurisdiction on a nonresident defendant "only where the defendant can be said to have targeted the forum." *Id.* at 882. The plurality further stated, "it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.*

¶ 31     In a concurring opinion, Justice Breyer, joined by Justice Alito, agreed with the Kennedy plurality's decision that the New Jersey court did not have jurisdiction over the defendant, but for different reasons. *Id.* at 893 (Breyer, J., concurring, joined by Alito, J.). Justices Breyer and Alito agreed with the judgment because no court precedents had held that a single isolated sale was sufficient to assert jurisdiction. *Id.* at 888. Justices Breyer and Alito, however, disagreed with the plurality's "strict no-jurisdiction rule." *Id.* at 890. According to Justices Breyer and Alito, the outcome of the case should have been decided on precedents, and the Kennedy plurality's "broad pronouncements that refashion basic jurisdictional rules" was inappropriate. *Id.*

¶ 32     In dissent, Justice Ginsburg, joined by two other justices, argued that the New Jersey court had jurisdiction over the defendant because the defendant had targeted the entire United States market. *Id.* at 898 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.). The

defendant had made arrangements with an American-based distributor to market its products throughout the United States and regularly attended trade shows to reach customers nationwide. *Id.* at 896.

¶ 33 Following the decision in *J. McIntyre*, our supreme court revisited the stream-of-commerce theory in *Russell*, 2013 IL 113909. Having carefully reviewed *J. McIntyre*, the *Russell* court rejected the defendant's argument that the Kennedy plurality's opinion and Justice Breyer's concurrence in *J. McIntyre* should be construed as adopting Justice O'Connor's narrow stream-of-commerce theory articulated in *Asahi*. *Id.* ¶ 70; *Asahi*, 480 U.S. at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). The *Russell* court explained that while the Kennedy plurality in *J. McIntyre* certainly favored that theory, Justice Breyer explicitly declined to announce any new jurisdictional rules and instead believed " 'the outcome of this case is determined by our precedents.' " *Russell*, 2013 IL 113909, ¶ 70 (quoting *J. McIntyre*, 564 U.S. at 887 (Breyer, J., concurring, joined by Alito, J.)). In recognizing this disagreement, the *Russell* court declined to state whether Justice Breyer intended to endorse Justice O'Connor's narrow stream-of-commerce theory, and accordingly, declined to adopt either the broad or narrow version of the theory. *Russell*, 2013 IL 113909, ¶ 71.

¶ 34 The *Russell* court, however, deciphered three points from the three separate opinions in *J. McIntyre*. *Id.* ¶ 67. First, although the proper application of the stream-of-commerce theory is not settled, the United States Supreme Court unanimously endorsed the continued validity of the theory from *World-Wide Volkswagen* to establish specific jurisdiction. *Id.* Second, specific jurisdiction should not be exercised based on a single sale in a forum, even when a manufacturer " 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.' " (Emphasis omitted.) *Id.* ¶ 68 (quoting *J. McIntyre*, 564 U.S. at 891 (Breyer, J., concurring, joined by Alito, J.)). The *Russell* court noted this is consistent with the decision in *Wiles*, that the competing opinions in *Asahi* required that the nonresident defendant be aware that the final product is being marketed in the forum state. *Id.* Third, a minority of the United States Supreme Court believes that a broader stream-of-commerce theory should be applied and is warranted under *International Shoe*'s focus on " 'notions of fair play and substantial justice.' " *Id.* ¶ 69 (quoting *J. McIntyre*, 564 U.S. at 910 (Ginsburg, J., dissenting, joined by Sotomayor and Kagan, JJ.)). In applying these standards to the facts of the case, the *Russell* court determined that the defendant had the requisite minimum contacts with Illinois. *Id.* ¶ 85. The *Russell* court reasoned defendant was a French manufacturer of custom-made bearings for the aerospace industry, defendant knowingly used an American distributor to distribute and market its products throughout the United States including Illinois, the distributor made multiple sales of defendant's products in Illinois, and defendant had a business relationship with a buyer in Illinois for its custom-made bearings. *Id.*

¶ 35 In light of the above discussion, we find that under either version of the stream-of-commerce theory, Giant Manufacturing has the requisite minimum contacts with Illinois. Under the broad stream-of-commerce theory, as previously examined, Illinois can assert personal jurisdiction as long as defendant is involved in "the regular and anticipated flow of products from manufacture to distribution to retail sale" and is "aware that the final product is being marketed in the forum State." *Asahi*, 480 U.S. at 117 (Brennan, J., specially concurring, joined by White, Marshall, and Blackmun, JJ.). We initially note that Giant

Manufacturing's claim that it did not know its bicycles were being sold in Illinois is disingenuous. In its initial answer to plaintiff's interrogatories, it acknowledged that Giant brand bicycles were first sold in Illinois in 1988. In that answer, Giant Manufacturing also stated Giant Bicycle had authorized Westchester in 2006 and Hartley's in 2013 to sell and service Giant brand bicycles. Later, in its supplemented answers, Giant Manufacturing further acknowledged it knew that Giant Bicycle had shipped Giant brand bicycles to certain retailers in Illinois from 2005 to 2009. Moreover, at least two individuals, Tu and Liu, were decision makers or top management employees at both defendant and Giant Bicycle. Tu was employed as CFO with Giant Manufacturing since 1993 and was a director at Giant Bicycle since 1994; Liu was a director at Giant Bicycle since 1987 and a director with Giant Manufacturing since 1997. In addition, Giant Bicycle's public website indicates that in 2014, when defendant was served with summons, approximately 40 retailers in Illinois were authorized to sell Giant brand bicycles in Illinois. *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 713 (2004) (questions of personal jurisdiction depend on the contacts the foreign defendant has with the forum state at the time the defendant is made a party to the litigation). Also, Giant Manufacturing does not contend that the sale of Giant brand bicycles in Illinois was an isolated event. Thus, while the record does not disclose the volume of Giant brand bicycles marketed in Illinois, it is reasonable to infer that its commercial transactions, like those of other manufacturers, result in more than an insubstantial use and consumption in this state. See *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 442 (1961) (where the defendant did not claim that the present use of its product in Illinois is an isolated instance, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in Illinois); see also *Saia v. Scripto-Tokai Corp.*, 366 Ill. App. 3d 419, 427 (2006) (same). We thus find there is sufficient evidence that there was a "regular and anticipated flow" of Giant brand bicycles in Illinois and that defendant was aware that its bicycles were being marketed in Illinois. *Asahi*, 480 U.S. at 117.

¶ 36 Further, even under the narrow stream-of-commerce theory, we find Giant Manufacturing has purposefully availed itself of the Illinois market, such that it has sufficient minimum contacts with Illinois. *Id.* at 112 (opinion of O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.). The record establishes that Giant Manufacturing indirectly shipped its Giant brand bicycles into the United States market, including Illinois, through Giant Bicycle, its second-tier subsidiary; that is, Giant Bicycle was a wholly owned subsidiary of Gaiwin B.V., which was in turn a wholly owned subsidiary of Giant Manufacturing. Giant Manufacturing does not deny that Giant Bicycle is its sole distributor in the United States market. Giant Bicycle's public website also states that Giant brand bicycles are "sold exclusively through Giant Authorized Dealers." As such, the only way that Giant Manufacturing's bicycles would ever reach a final consumer in United States was through Giant Bicycle and its authorized retailers. Thus, the fact that there were approximately 40 Giant Bicycle authorized retailers in Illinois further demonstrates that defendant continuously and intentionally serves or targets this market. Moreover, the retailers in Illinois were authorized to not only sell but also service Giant brand bicycles. In other words, channels were established for servicing and providing regular advice to customers regarding Giant brand bicycles in Illinois. *Id.* (establishing channels for providing regular advice to customers in the forum state is an example of "[a]dditional conduct" under the narrow

- 10 -

stream-of-commerce theory). Therefore, given the continuous nature of Giant Manufacturing's relationship with Giant Bicycle and its authorized retailers in Illinois, the presence of Giant Manufacturing's products in Illinois was not random, fortuitous, or attenuated. See *Soria v. Chrysler Canada, Inc.*, 2011 IL App (2d) 101236, ¶ 30.

¶ 37    We further find that Giant Manufacturing's reliance on *J. McIntyre* and *Wiles* is misplaced as the facts in the two cases are distinguishable. As aforementioned, in *J. McIntyre*, the foreign defendant did not have a single contact with the forum state, short of the machine in question that caused the accident. *J. McIntyre*, 564 U.S. at 886. Here, as previously discussed, the record establishes that Giant Manufacturing has purposefully availed itself of the Illinois market through its 40 authorized retailers.

¶ 38    Furthermore, unlike *Wiles*, where the court found the record was "totally devoid" of any evidence that the Japanese manufacturer was aware that its products might be destined for Illinois, there is ample evidence here that Giant Manufacturing was aware that its Giant brand bicycles were being marketed in Illinois. *Wiles*, 125 Ill. 2d at 160. Additionally, we are not dealing with a single isolated transaction by a foreign defendant as in *Wiles*. *Id.* at 161.

¶ 39    We also find Giant Manufacturing's reliance on *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, 137 S. Ct. 1773 (2017) to be misplaced. In *Bristol-Myers*, the Supreme Court found that due process did not permit exercise of specific personal jurisdiction in California over nonresident consumers' claims. *Id.* at ___, 137 S. Ct. at 1782. Here, plaintiff is a resident of Illinois. Accordingly, *Bristol-Myers* is not applicable in this case.

¶ 40    For these reasons, we find that Giant Manufacturing had sufficient minimum contacts with Illinois for purposes of specific personal jurisdiction. *World-Wide Volkswagen*, 444 U.S. at 297-98.

¶ 41                                   C. Arises-Out-of Requirement

¶ 42    Having determined that Giant Manufacturing has the requisite minimum contacts with Illinois, we turn to consider whether plaintiff has demonstrated that the action arose out of or was related to the company's contacts with Illinois. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 954 (2010). The "arising out of" or "related to" standard is a lenient and flexible standard. *Russell*, 2013 IL 113909, ¶ 83. We find that this requirement has been met in this case. Here, plaintiff's injuries clearly arose out of and were directly related to her use of a bicycle manufactured by Giant Manufacturing and sold to plaintiff through a Giant brand authorized retailer in Illinois. In other words, the cause of action directly arose out of Giant Manufacturing's contacts with Illinois. See *Soria*, 2011 App (2d) 101236, ¶ 34 (the "arising out of" or "related to" requirement was met where the plaintiff's injuries clearly arose out of and were directly related to her use of a vehicle assembled by the nonresident defendant).

¶ 43                                   D. Reasonableness

¶ 44    Next, having determined that plaintiff has established that the action arose out of or was related to Giant Manufacturing's contacts with Illinois, we must consider whether it would be reasonable to require Giant Manufacturing to litigate in Illinois. *Wiggen*, 2011 IL App (2d) 100982, ¶ 22. In making this decision, we must consider (1) the burden on Giant

Manufacturing, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining relief, and (4) the interest of the affected forums in the efficient judicial resolution of the dispute and advancement of substantive social policies. *Russell*, 2013 IL 113909, ¶ 87 (citing *Wiles*, 125 Ill. 2d at 152).

¶ 45    In the case at bar, Illinois has a strong interest in providing its citizens effective redress for torts caused by products distributed here. Illinois cannot protect this interest unless it asserts jurisdiction over foreign corporations that use subsidiaries to distribute the products they have manufactured. Illinois also has a strong interest in providing a forum in which its residents may seek relief from wrongs they have suffered. Further, plaintiff has a strong interest in obtaining relief for her injuries that were allegedly caused by Giant Manufacturing.

¶ 46    While we are mindful that Giant Manufacturing is a foreign corporation, it is no stranger to the United States legal system, as it has been a party to litigation in several states and has retained local counsel.[3] We also recognize that the United States Supreme Court in both *Asahi* and *J. McIntyre* focused, in part, on the burden imposed on foreign defendants when concluding that the exercise of jurisdiction would be unreasonable. However, unlike in *Asahi*, we are not dealing solely with indemnification claims between Taiwanese and Japanese companies. Here, plaintiff's products liability claim against Giant Manufacturing remains before this court. See *Russell*, 2013 IL 113909, ¶ 90. Also, unlike in *J. McIntyre*, we are not dealing with a single isolated sale by the foreign defendant. See *id.* ¶ 91; *J. McIntyre*, 564 U.S. at 886. In this case, although Giant Manufacturing claims it has no information regarding the number of Giant brand bicycles shipped to Illinois by Giant Bicycle between 2005 and 2009, it acknowledged that Giant brand bicycles were shipped to certain retailers in Illinois during that time period. In sum, although we acknowledge that having to litigate in Illinois may be a burden on Giant Manufacturing as an alien defendant, the other factors nevertheless outweigh this factor. We thus conclude that it is reasonable for Illinois to exercise personal jurisdiction over Giant Manufacturing. See *Russell*, 2013 IL 113909, ¶¶ 90-91.

¶ 47                                  CONCLUSION

¶ 48    In light of the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.

¶ 50    JUSTICE GORDON, specially concurring.

¶ 51    I agree with the well-written opinion of the majority that, under either version of the stream-of-commerce theory, Giant Manufacturing has the requisite minimum contacts with Illinois, but I write separately to clarify and add to the reasoning of the majority opinion.

¶ 52    In Giant Manufacturing's corporate structure, it was in effect the owner of Giant Bicycle, its exclusive distributor of Giant-brand bicycles. Giant Bicycle is a wholly-owned subsidiary of Gainin B.V., which is wholly owned by Giant Manufacturing. Giant Bicycle had

---

[3]See *Giant Manufacturing Co. v. BikeE Corp.*, No. Civ. 02-6222-TC, 2004 WL 1698056, at *1 (D. Or. July 28, 2004); see *Naumann v. Giant Bicycle Inc.*, 516 N.W.2d 20 (Wis. Ct. App. 1994) (table).

approximately 40 "Giant authorized dealers present in Illinois." Giant Bicycle maintained a distribution warehouse in Elgin, Illinois, where the bicycles manufactured by Giant Manufacturing were shipped. It was from this warehouse the bicycles were distributed to its authorized dealers. In 2012, approximately 312,000 Giant-brand bicycles were sold in the United States, which represented 13% of the specialty bicycle market in the United States. All of the distribution of the bicycles came through the warehouse under the evidence produced by Giant Manufacturing or Giant Bicycle. Giant Bicycle authorized Westchester in 2006 and Hartley in 2013 to sell and service Giant-brand bicycles. Since Giant Manufacturing in effect owned and controlled Giant Bicycles, it was involved in "the regular and anticipated flow of products from manufacture to distribution to retail sale" (*Asahi*, 480 U.S. at 117 (Brennan, J.,specially concurring, joined by White, Marshall, and Blackmun, JJ.)) and had to be "aware that the final product is being marketed in the forum State" (*id.*). Even if this court adopted the broader stream-of-commerce theory under *International Shoe*, which focused on " 'notions of fair play and substantial justice' " (*International Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463)), Giant Manufacturing had more than the requisite minimum contacts with Illinois. Giant Manufacturing in effect set up its business to cover the entire United States through its ownership and control of its exclusive distribution of Giant-brand bicycles. It needed no formal agreement with Giant Bicycles because it owned and control the distribution of its product. As a result, it is reasonable for Illinois to exercise personal jurisdiction over Giant Manufacturing.