**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190521-U

Order filed January 5, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| LLOYD SCHOENBECK and PATRICIA SCHOENBECK, as Guardians of the Estate of Matthew R. Schoenbeck, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| MASTERLINK CONCRETE PUMPING, LLC, TIMOTHY CARLTON, DEAN T. BURNHAM, individually and d/b/a Burnham Concrete Co., and PUTZMEISTER AMERICA, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | Appeal No. 3-19-0521 Circuit No. 18-L-393 |
| MASTERLINK CONCRETE PUMPING, LLC, TIMOTHY CARLTON and PUTZMEISTER AMERICA, INC., | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| CONCRETE PUMPING OF MICHIANA, LLC, n/k/a LAWRENCE FAMILY, LLC, | ) ) ) | Honorable Raymond E. Rossi, |
| Third-Party Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Third-party defendant lacked minimum contacts with Illinois for purposes of personal jurisdiction under the "catch-all provision" of the long-arm statute. The trial court erred by denying third-party defendant's section 3-201 motions to dismiss third-party plaintiffs' complaints for contribution.

¶ 2    Matthew Schoenbeck was injured while attempting to remove a concrete conveyor truck from the mud on his private property located in Beecher, Illinois. Matthew subsequently died due to the severity of his injuries. Plaintiffs, Lloyd and Patricia Schoenbeck, filed a first amended complaint for damages, as the guardians of Matthew's estate, against, among others, third-party plaintiffs, Masterlink Concrete Pumping, LLC (Masterlink), Timothy Carlton, Putzmeister America, Inc. (Putzmeister), and third-party defendant, Concrete Pumping of Michiana, LLC, n/k/a Lawrence Family, LLC (CPM), which, respectively, were the owner, operator, manufacturer, and former owner of the concrete conveyor truck when Matthew was injured.

¶ 3    Third-party plaintiffs filed separate complaints for contribution against CPM, which is a nonresident former limited liability company from Indiana. CPM filed separate motions to dismiss the third-party complaints for contribution for lack of personal jurisdiction under section 2-301 of the Code of Civil Procedure (Code), 735 ILCS 5/2-301 (West 2018). The trial court denied CPM's motions. Thereafter, CPM filed a petition for leave to appeal under Ill. S. Ct. R. 306(a)(3) (eff. Oct. 1, 2019). After our court denied CPM's Rule 306 petition, CPM filed a petition for leave to appeal with our supreme court under Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). After denying CPM's Rule 315 petition, the supreme court directed our court to consider the merits of the personal jurisdiction issue. Now, on review of that issue, we reverse the trial court.

¶ 4                                    I. BACKGROUND

¶ 5          On July 14, 2016, plaintiffs, as the guardians of Matthew's estate, filed a first amended

complaint for damages against, among others, Masterlink, Carlton, Putzmeister, and CPM. In

July 2014, Matthew was constructing a home on his property in Beecher, Illinois. Masterlink was

hired to provide a concrete conveyor truck, manufactured by Putzmeister, for the construction.

Masterlink is an Indiana limited liability company and Putzmeister is a Wisconsin corporation.

¶ 6          On July 15, 2014, the employee operating Masterlink's concrete conveyor truck on the

construction site, Carlton, allegedly caused that machine to become stuck in the mud. Rather

than calling a professional for help, Carlton allegedly "requested assistance from others,"

including Matthew. Carlton allegedly requested that Matthew pull the concrete conveyor truck

from the mud using his farm tractor. More specifically, Carlton allegedly directed Matthew "as

to the placement of the *** tow strap on the *** [concrete conveyor truck] and [Matthew's] farm

tractor." During the attempt to free the concrete conveyor truck from the mud, Matthew was

"catastrophically injured when the pintle hook, bracket and bolts *** snapped off the rear

bumper of the [concrete conveyor truck] *** [and] catapult[ed] through the rear window of the

*** farm tractor, striking Matthew *** in the head."[1]

¶ 7          Following plaintiffs' voluntary dismissal of the claims against CPM, Putzmeister, on

July 12, 2018, filed a third-party complaint for contribution against CPM. Putzmeister alleged

that CPM, a small Indiana limited liability company with approximately six employees, was the

original owner of the concrete conveyor truck. Further, Putzmeister alleged that, during CPM's

---

[1]In their first amended complaint, plaintiffs alleged the following: (1) negligence by Masterlink;
(2) agency and respondeat superior against Masterlink; (3) willful and wanton conduct by Masterlink;
(4) negligence by Carlton; (5) willful and wanton conduct by Carlton; (6) negligence by defendant, Dean
T. Burnham, individually and d/b/a Burnham Concrete Co. (Burnham); (7) willful and wanton conduct by
Burnham; (8) product liability by Putzmeister; (9) negligence by Putzmeister; (10) willful and wanton
conduct by Putzmeister; (11) negligence by CPM; and, (12) willful and wanton conduct by CPM.

3

ownership of the concrete conveyor truck, CPM "altered the pintle hook/hitch on the rear bumper of the machine," which resulted in a "pintle hook/hitch [that] was improper and unsafe for use in the industry and [that] created a dangerous condition."

¶ 8 On August 14, 2018, Masterlink and Carlton filed their own joint third-party complaint for contribution against CPM. Relevantly, CPM sold the concrete conveyor truck to Masterlink as part of a broad business sale in April 2013.[2] Around that time, Masterlink also rehired some of CPM's former employees, including Carlton. Thus, in the third-party complaint for contribution, Masterlink and Carlton alleged, "[b]etween the date of [the concrete conveyor truck's] delivery from Putzmeister to CPM and [the concrete conveyor truck's] sale [from CPM] to Masterlink," CPM had "exclusive possession of" and was "the only owner," "entity that serviced," and "entity that modified" the concrete conveyor truck involved in Matthew's accident.

¶ 9 On September 20, 2018, CPM filed separate motions to dismiss third-party plaintiffs' complaints for contribution under section 2-301. CPM argued the third-party complaints for contribution were "devoid of any allegations of fact upon which a court could base personal jurisdiction" under the provisions of section 2-209 of the Code, 735 ILCS 5/2-209 (West 2018), which is the Illinois long-arm statute. As support for each motion to dismiss, CPM argued it sold the concrete conveyor truck to Masterlink in April 2013—over a year before Matthew's accident and fatal injuries. CPM also stated its "business operations were confined exclusively to" Indiana. Consequently, CPM asserted, even if CPM "altered the pintle hook/hitch on the rear bumper of the" concrete conveyor truck, as alleged by third-party plaintiffs, "that act would not have occurred (and [wa]s not alleged to have occurred)" in Illinois. Thus, the claims against

_____

[2]On February 28, 2017, after Masterlink failed to appear, CPM obtained a declaratory judgment against Masterlink in the circuit court of Marshall County, Indiana. The declaratory judgment stated CPM had no obligation to Masterlink under paragraph 4 of the parties' sale agreement and was not required to "indemnify [Masterlink] for any damages arising out of [Matthew's] incident on July 15, 2014."

4

CPM did not arise out of or relate to wrongful acts by CPM in the State of Illinois. In addition, CPM argued that it was not a business organized under Illinois law, a natural person located in the State of Illinois when served, "domiciled or [a] resident in Illinois," or a business with "*any* [business] contacts *** with Illinois." (Emphasis in original.) Finally, CPM argued its "contacts with Illinois [we]re non-existent such that a finding of personal jurisdiction would offend traditional notions of fair play and substantial justice" and violate principles of due process.

¶ 10    On July 12, 2019, after an agreed period for limited discovery on the issue of personal jurisdiction, Putzmeister filed a response to CPM's motion to dismiss Putzmeister's third-party complaint for contribution. Putzmeister argued the limited discovery period documented that "CPM spent the full 18-years of its operations hiring union machine operators[,] as a central part of its business," out of Countryside, Illinois. Putzmeister asserted that CPM spent "18 years sending payments to Countryside, Illinois, to have the benefit of those union workers," who had the option of travelling to Illinois for meetings, votes, training, and the filing of grievances.

¶ 11    In addition, Putzmeister argued that discovery revealed, during the time CPM owned the concrete conveyor truck involved in Matthew's accident, CPM brought the machine "to Illinois for its regular maintenance." Although CPM could have serviced the concrete conveyor truck at "any number of other facilities, including [facilities] in Indiana or Michigan," CPM "opted to drive both the [concrete conveyor truck], and a following car, approximately 120 miles (including nearly 50 miles inside Illinois), [to] leave their equipment" overnight in Illinois. The next day, CPM picked up the concrete conveyor truck by doing "the same process in reverse." Thus, CPM "actively sought out an Illinois company to maintain a crucial piece of equipment used in [its] business," thereby invoking the personal jurisdiction of the Illinois courts.

¶ 12         Masterlink and Carlton filed a joint response to CPM's motion to dismiss their third-party

complaint for contribution on July 15, 2019. Masterlink and Carlton stated that the trial court had

personal jurisdiction over CPM, as the previous owner of the concrete conveyor truck, because

of "its long-standing and repetitive contacts with Illinois." Masterlink and Carlton cited the

following examples: CPM's "payments to an Illinois union" over 20 years; CPM's servicing of

the concrete conveyor truck involved in Matthew's accident in Illinois "2-5 times" around 2011;

CPM's employment of Illinois union members for over 20 years; and, CPM's repeated business

and contractual relationships, including collective bargaining agreements, with Illinois entities.

¶ 13         On August 8, 2019, the trial court denied CPM's motions to dismiss third-party plaintiffs'

separate complaints for contribution "based on the briefs and arguments of counsel." On

September 6, 2019, CPM timely filed a petition for leave to appeal the trial court's ruling under

Rule 306(a)(3). After reviewing the petition, together with the responses of Putzmeister and

Masterlink and Carlton, our court, on October 17, 2019, denied CPM's Rule 306 petition.

¶ 14         On November 19, 2019, CPM filed a petition for leave to appeal with our supreme court

under Rule 315. Our supreme court denied CPM's Rule 315 petition but remanded the matter to

our court with directions "to grant leave to appeal and to consider the issue of dismissal for the

lack of personal jurisdiction on its merits." Now that this appeal has been fully briefed by the

parties, we carefully consider the personal jurisdiction issue.[3]

¶ 15                                              II. ANALYSIS

¶ 16         On appeal, CPM, a nonresident limited liability company, challenges the trial court's

denial of its section 2-301 motions to dismiss third-party plaintiffs' complaints for contribution

due to lack of personal jurisdiction. CPM argues the Illinois long-arm statute does not provide a

_____

[3]Only CPM, Putzmeister, and Masterlink and Carlton submitted briefs to this court on appeal.

basis for personal jurisdiction in this case. Conversely, third-party plaintiffs, Putzmeister and Masterlink and Carlton, submit that the "catch-all provision" of the Illinois long-arm statute applies and supports the trial court's decision to deny CPM's section 2-301 motions to dismiss.

¶ 17 The trial court denied CPM's section 2-301 motions to dismiss based on documentary evidence adduced during a limited discovery period and without a contested hearing or findings of fact. Therefore, our review is *de novo*. See *Russell v. SNFA*, 2013 IL 113909, ¶ 28. Conflicts in the pleadings will be resolved in favor of third-party plaintiffs. *Id.*

¶ 18                              A. The Illinois Long-Arm Statute

¶ 19 The Illinois long-arm statute, section 2-209 of the Code, governs the exercise of personal jurisdiction over nonresident defendants. See *id.* ¶ 29. Section 2-209 is divided into three subsections that identify various grounds for the exercise of personal jurisdiction. See *id.*; 735 ILCS 5/2-209(a), (b), (c) (West 2018); *Burgauer v. Burgauer*, 2019 IL App (3d) 170545, ¶ 22. Section 2-209(a) and (b) enumerate particular bases by which the trial court may exercise specific or general personal jurisdiction over a nonresident defendant. See 735 ILCS 5/2-209(a), (b) (West 2018); *Burgauer*, 2019 IL App (3d) 170545, ¶¶ 23-24.

¶ 20 At issue here, however, is section 2-209(c), which is colloquially referred to as the long-arm statute's "catch-all provision." See 735 ILCS 5/2-209(c) (West 2018); *Russell*, 2013 IL 113909, ¶ 30. Section 2-209(c) states "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." See 735 ILCS 5/2-209(c) (West 2018). Our supreme court has found that this "catch-all provision" is "an independent basis for exercising personal jurisdiction that effectively collapses the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30.

¶ 21    Generally, if federal due process standards are satisfied for purposes of personal jurisdiction, then Illinois due process standards will be satisfied for purposes of personal jurisdiction. See *id.* ¶ 32; *Wesly v. National Hemophilia Foundation*, 2020 IL App (3d) 170569, ¶ 16; *Kowal v. Westchester Wheels, Inc.*, 2017 IL App (1st) 152293, ¶ 17; compare *Rollins v. Ellwood*, 141 Ill. 2d 244, 271-75 (1990). CPM does not claim it is entitled to greater protections under the Illinois due process clause than under the federal due process clause. Based upon this posture, our court, like the supreme court in *Russell*, need not decide whether Illinois due process protections differ from federal due process protections on the issue of personal jurisdiction in this case. See *Russell*, 2013 IL 113909, ¶ 33; *Kowal*, 2017 IL App (1st) 152293, ¶ 17.

¶ 22    For the reasons set forth below, we hold that, due to CPM's lack of sufficient minimum contacts with Illinois, the trial court's exercise of personal jurisdiction, based on the "catch-all provision" of the long-arm statute, would not satisfy federal due process standards. As a result, third-party plaintiffs' complaints for contribution must be dismissed under section 2-301.

¶ 23                           B. Federal Due Process

¶ 24    For personal jurisdiction over a nonresident corporate defendant, federal due process requires the defendant to have "certain minimum contacts with the forum State such that maintenance of the suit there [would] not offend 'traditional notions of fair play and substantial justice.' " *Wiles v. Morita Iron Works Co., Ltd.*, 125 Ill. 2d 144, 150 (1988) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); accord *Russell*, 2013 IL 113909, ¶ 34. If minimum contacts exist, then courts consider whether exercising personal jurisdiction would be reasonable. *Russell*, 2013 IL 113909, ¶ 34. The "minimum contacts" inquiry turns on whether the plaintiff asserts general or specific personal jurisdiction. *Id.* ¶ 34 (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 613 (2005)); *Kowal*, 2017 IL App (1st)

8

152293, ¶ 21 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

¶ 25                                                          1. General Personal Jurisdiction

¶ 26        For general personal jurisdiction over a nonresident corporate defendant, federal due process requires "continuous and substantial business activity within the forum, the paradigm example *** being a location where [the nonresident corporate defendant] 'is fairly regarded as at home.' " *Russell*, 2013 IL 113909, ¶ 36 (quoting *Goodyear*, 564 U.S. at 924). In this way, a nonresident corporate defendant may be subject to litigation "based on activity that is entirely distinct from its activity in the forum." *Id.* (citing *Goodyear*, 564 U.S. at 924). The standard for finding that general personal jurisdiction exists over a nonresident corporate defendant "is very high and requires a showing that [it] carried on systemic business activity in Illinois 'not casually or occasionally, but with a fair measure of permanence and continuity.' [Citations]." *Id.* Essentially, the nonresident corporate defendant must take up residence in Illinois. *Id.*

¶ 27        Here, the facts are largely undisputed.[4] CPM was an Indiana limited liability company, with approximately six employees, that never maintained business operations in Illinois. CPM did allegedly contract with, hire members of, and send payments to an Illinois union for a period of two decades prior to April 2013. However, in April 2013, CPM sold its business, including the concrete conveyer truck involved in Matthew's accident on July 15, 2014, to another Indiana company, Masterlink. Necessarily, the sale between CPM and Masterlink in April 2013 completely extinguished CPM's Illinois union contacts as well as CPM's business operations.

---

        [4]CPM disputes that it brought the concrete conveyor truck to Illinois "2-5 times." CPM states the concrete conveyor truck was brought to Illinois for maintenance "one time (possibly two) in 2011."

9

¶ 28    Consequently, CPM's extinguished Illinois union contacts do not give rise to general personal jurisdiction over nonresident CPM, where those union ties were severed, when CPM closed its doors pursuant to the April 2013 sale to Masterlink, over one year before Matthew's accident. See *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 713 (2004) (First District finding, under section 2-209(b)(4), "because defendant had ceased all business in Illinois before defendant was either made a party to the suit and served with process or plaintiff's injury occurred, an Illinois court [could] not exercise personal jurisdiction over defendant under the 'doing business' doctrine."). Even if those extinguished Illinois union contacts qualified as "business activity," we would not conclude they amounted to "continuous and substantial business activity within" Illinois, such that CPM was " 'fairly regarded as at home.' " See *Russell*, 2013 IL 113909, ¶ 36 (quoting *Goodyear*, 564 U.S. at 924). Clearly, those contacts were insufficient to demonstrate CPM essentially took up residence in Illinois. See *id*.

¶ 29    For these reasons, CPM does not, under federal due process standards, have sufficient minimum contacts with Illinois for the trial court to exercise general personal jurisdiction. Thus, we need not decide whether subjecting CPM to litigation here would be reasonable. See *id*. ¶ 34.

¶ 30                                  2. Specific Personal Jurisdiction

¶ 31    Next, we consider whether the trial court's exercise of specific personal jurisdiction over CPM would be consistent with federal due process standards. Unlike general personal jurisdiction, specific personal jurisdiction requires that "the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Id*. ¶ 40 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); See also *Wesly*, 2020 IL App (3d) 170569, ¶ 28. In this way, the nonresident defendant avails itself "to the privilege of conducting activities within the State, invoking the

10

benefits and protections of Illinois law." *Burgauer*, 2019 IL App (3d) 170545, ¶ 26. The nonresident defendant then "has a reasonable anticipation of being haled into an Illinois courthouse when [its] activities become the subject of litigation." *Id*.

¶ 32    The above requirement prevents a nonresident defendant from being "forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or some other third person." *Kowal*, 2017 IL App (1st) 152293, ¶ 20 (citing *Burger King Corp.*, 471 U.S. at 475). A trial court may exercise specific personal jurisdiction "based on certain ' "single or occasional acts" ' *** but only with respect to matters related to those acts." *Russell*, 2013 IL 113909, ¶ 40 (quoting *Goodyear*, 564 U.S. at 923).

¶ 33    Here, CPM, through its agents, "purposefully directed" certain activities at our State by driving the concrete conveyor truck to Illinois "2-5 times" around 2011. See *id*. ¶ 40 (citing *Burger King Corp.*, 471 U.S. at 472); *Wesly*, 2020 IL App (3d) 170569, ¶ 28. The purpose of these trips was to obtain routine servicing of the concrete conveyor truck. However, those trips, which apparently ended in 2011, took place approximately two years before CPM surrendered its control and ownership of the concrete conveyor truck to Masterlink pursuant to the parties' business sale in April 2013. Likewise, CPM's trips to Illinois occurred approximately three years before Matthew's accident and fatal injuries on July 15, 2014.

¶ 34    Therefore, we conclude third-party plaintiffs' action for contribution, which stems from Matthew's accident and injuries, did not even tangentially arise out of or relate to CPM's trips to Illinois for routine servicing in 2011. See *id*. ¶ 40 (citing *Burger King Corp.*, 471 U.S. at 472); *Wesly*, 2020 IL App (3d) 170569, ¶ 28. A finding of specific personal jurisdiction here would be based upon "random, fortuitous, [and] attenuated contacts" only coincidentally connecting nonresident CPM to nonresident third-party plaintiffs and Matthew's accident and injuries. See

11

*Kowal*, 2017 IL App (1st) 152293, ¶ 20 (citing *Burger King Corp.*, 471 U.S. at 475). Based on the undisputed facts, CPM could not have reasonably anticipated that its routine servicing of the concrete conveyor truck in Illinois, on a handful of occasions ending in 2011, would result in CPM "being haled into an Illinois courthouse" to defend against this action for contribution related to Matthew's accident and the liability of the concrete conveyor truck's manufacturer and current owner and operator. See *Burgauer*, 2019 IL App (3d) 170545, ¶ 26.

¶ 35 Finally, we note that third-party plaintiffs alleged, in their respective complaints for contribution, CPM modified or altered the concrete conveyor truck's "pintle hook/hitch" before the sale to Masterlink, another Indiana company, in April 2013. As CPM has noted, third-party plaintiffs do not allege that this alteration or modification occurred in Illinois. Likewise, nothing in the record, such as the descriptive receipts from the Illinois business that serviced the concrete conveyor truck in 2011, supports such an allegation. Thus, even resolving all conflicts in the pleadings in favor of third-party plaintiffs, we conclude third-party plaintiffs have not established a *prima facie* basis for exercising specific personal jurisdiction over CPM based upon alleged modifications or alterations to the "pintle hook/hitch." See *Russell*, 2013 IL 113909, ¶ 28.

¶ 36 For these reasons, CPM does not, under federal due process standards, have sufficient minimum contacts with Illinois for the trial court to exercise specific personal jurisdiction. Thus, we need not decide whether subjecting CPM to litigation here would be reasonable. See *id*. ¶ 34.

¶ 37                                                III. CONCLUSION

¶ 38 Third-party plaintiffs failed to meet their burden of establishing the minimum contacts necessary for an exercise of personal jurisdiction over CPM under section 2-209(c). Therefore, the trial court erred by denying CPM's section 2-301 motions to dismiss.

¶ 39 Reversed.