NOTICE
Decision filed 01/22/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200246

NO. 5-20-0246

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ANNE SCHLAFLY CORI, Individually and as a Beneficiary of the John Fred Schlafly Testamentary Trust, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 17-CH-612 |
| JOHN F. SCHLAFLY, Individually and as Co-Trustee of the John Fred Schlafly Testamentary Trust; ROGER SCHLAFLY, Individually and as Co-Trustee of the John Fred Schlafly Testamentary Trust; BRUCE S. SCHLAFLY; ANDREW L. SCHLAFLY; and LIZA SCHLAFLY FORSHAW, | ) ) ) ) ) ) ) ) | |
| Respondents | ) ) | |
| (Roger Schlafly, Individually and as Co-Trustee of the John Fred Schlafly Testamentary Trust, Respondent-Appellant; Liza Schlafly Forshaw, Respondent-Appellee). | ) ) ) ) | Honorable Sarah D. Smith, Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1     The respondent, Roger Schlafly, individually and as co-trustee of the John Fred Schlafly Testamentary Trust (Trust), appeals, pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), the July 20, 2020, order of the circuit court of Madison County. This order granted a partial summary judgment in favor of the petitioner, Anne Schlafly Cori, individually,

1

as a beneficiary of the Trust, as well as the respondent, Liza Schlafly Forshaw. As a result, the order required Roger to make an accounting and to submit a schedule for the distribution of the Trust assets, including a one-sixth share of the trust assets to Anne and a one-sixth share to Liza. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On September 29, 2017, Anne filed a petition in the circuit court of Madison County, seeking to have the circuit court adjudicate her rights as a beneficiary of the Trust. According to Anne's petition, John Fred Schlafly Jr. (Mr. Schlafly) and Phyllis Schlafly (Mrs. Schlafly) were husband and wife. Mr. Schlafly executed his last will and testament (Will) on December 10, 1982. The Will created the Trust, providing that the residue of Mr. Schlafly's estate be held in trust for the benefit of Mrs. Schlafly and naming Roger, as well as John F. Schlafly, as co-trustees.

¶ 4     Anne's petition states that the Trust terminated upon Mrs. Schlafly's death and, pursuant to the terms of the Will and Trust, the remaining Trust assets were to be divided into equal shares for each of Mr. Schlafly's six children: (1) Roger, (2) John, (3) Anne, (4) Liza, (5) Bruce, and (6) Andrew. Anne's petition alleges that Mrs. Schlafly died on September 5, 2016, and Roger and John had not terminated the trust and distributed its assets as required by the Will. Anne's petition names Roger and John as respondents, as well as Liza, Bruce, and Andrew, based on their status as co-beneficiaries. Paragraph 12 of Anne's petition alleges that the court has personal jurisdiction over the parties "as John and Roger are the [c]o-trustees of the Trust which is being administered in Madison County, Illinois, and because [Anne] and Andrew, Bruce, and Liza are beneficiaries of said Trust."

¶ 5 Count I of the petition requests an accounting of Trust assets. Count II requests that Roger and John be compelled to terminate the Trust and distribute its assets equally and outright to the beneficiaries. Count III requests money damages from Roger and John based on breach of trust and count IV requests that Roger and John be removed as co-trustees of the Trust. Anne attached the Will to her petition. The Will bears a file stamp evidencing it was probated in Madison County in 1993. We will refer to the terms of the Will where necessary throughout the remainder of this order.

¶ 6 On January 9, 2018, Roger filed, pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2016)), a special and limited appearance for the purpose of contesting personal jurisdiction. On January 19, 2018, Roger filed a motion to dismiss Anne's petition for a lack of personal jurisdiction. In support of his motion, Roger attached an affidavit in which he avers as follows: (1) he is a resident of California; (2) he has not been a resident of Illinois since 1983; (3) he has not conducted business in Illinois in any way that is relevant to the current lawsuit; (4) he does not own any real property in Illinois; (5) he is not licensed or registered to do business in Illinois; (6) he has not "at any relevant time" had an address, office, telephone number, bank account, employee, agent, or representative in Illinois; (7) he is the trustee of the Trust; (8) he has managed the Trust from California; and (9) the Trust does not have any assets in Illinois. According to Roger's motion, the circuit court does not have personal jurisdiction over him, and Anne's petition fails to allege facts demonstrating the circuit court has jurisdiction over the Trust.

¶ 7 In response to Roger's motion, Anne filed a counteraffidavit. In her counteraffidavit, Anne avers as follows: (1) Anne is a resident of Missouri; (2) Roger is a co-trustee of the Trust with John, who is a resident of Illinois; (3) "[b]ecause [John] resides in Illinois, it is inevitable

3

that some Trust business and administration is being conducted in Illinois which Roger, as a co-trustee either partook in, acquiesced in, or ratified"; (4) the Trust has paid taxes to Illinois; (5) the Will that created the Trust was executed and probated in Illinois; and (6) because Roger and John have refused to provide Anne with a full accounting detailing how the trust is being administered and the location of all the Trust's assets, Anne is unable to accurately ascertain the truth of the statements in John's affidavit regarding the location of the Trust's assets.

¶ 8      On June 14, 2018, the circuit court held a hearing on Roger's motion to dismiss and took the motion under advisement "pending further discovery and argument." On October 5, 2018, Anne filed a taxpayer's statement from the Illinois Department of Revenue, dated December 1, 2017, reflecting that the Trust owed unpaid Illinois taxes for the year 2006, as well as the years 2009-2015. The statement was addressed to the Trust, in care of John, at an Alton address. Anne also filed a letter from John to Roger, dated December 21, 2017, wherein John notifies Roger that he has decided to resign as co-trustee of the Trust effective December 31, 2017. The letter continues by stating, "I have provided you with books and records of the Trust so that you can fully manage the Trust beginning on January 1, 2018, and I will complete the transfer of any remaining books and records in my possession prior to December 31."

¶ 9      On November 1, 2018, Anne filed further documentation in response to Roger's motion to dismiss. She filed correspondence from John at his address in Alton to the IRS, dated April 18, 2017, attaching full payment for several years of income tax on behalf of the Trust. A copy of the check used to make the payment listed the Trust's address in Alton. Similarly, she filed copies of Illinois tax returns for the years 2009 through 2016, all of which listed the mailing address of the Trust in Alton. She filed the Trust's 2017 Illinois tax return, filed after this lawsuit was instituted, which listed the address of the Trust as Roger's address in California. She filed copies

4

of several checks written on behalf of the Trust that listed that same Alton address, dated on various days in 2012 and 2017, as well as statements from securities brokerage firm Scottrade, dated in various months from 2010 until 2017 addressed to the Trust at that address. A brokerage account application for Scottrade dated in 2018 was completed by Roger at the California address.

¶ 10    In December of 2018, Anne requested a full evidentiary hearing on Roger's motion to dismiss and motion to supplement the record with John's discovery deposition, which was taken on December 14, 2018. The circuit court granted Anne's motion, and an evidentiary hearing was set for January 10, 2019. During his deposition, John testified that he resides in Alton and was co-trustee of the Trust from its inception in 1993 until December 31, 2017. He authenticated the tax documents mentioned above and admitted to having prepared them. However, he testified that Roger made the investment decisions for the Trust from California throughout the Trust's existence. While there is no report of proceedings as to any evidentiary hearing on Roger's motion to dismiss, the circuit court entered an order on January 10, 2019, denying Roger's motion as to his capacity as trustee of the Trust. However, the circuit court granted Roger's motion as to his individual capacity.

¶ 11    On August 30, 2019, Anne filed a motion for partial summary judgment "on the interpretation of [T]rust terms" and on count II of her complaint, to compel distribution of her share of the Trust assets. In support of her motion, Anne attached a certified copy of the probate court record for the Estate of John F. Schlafly, which included the Will that created the Trust. In addition, she attached the death certificate showing that Mrs. Schlafly died on September 5, 2016. Finally, she attached her own affidavit, attesting to her age being over 26 years and the fact that she had not received a distribution of assets from the Trust.

5

¶ 12    Liza also filed a motion for partial summary judgment on August 30, 2019, requesting that the circuit court compel distribution of her share of the Trust assets. On September 19, 2019, Roger filed a cross-motion for a partial summary judgment, requesting that the circuit court find that he did not breach his duties as trustee and that Anne had encumbered the assets of the Trust and violated its spendthrift provision based on his assertion, "upon information and belief," that Anne, through extensive use of litigation in this lawsuit and other lawsuits in Missouri and Illinois, caused the Trust to incur extensive legal fees. Roger did not attach any documentation regarding these lawsuits to his cross-motion for a partial summary judgment.

¶ 13    On January 10, 2020, Roger filed a motion to stay the motions for partial summary judgment on the basis that discovery had not yet been conducted or to reschedule hearing on the motions until the trials in the other cases between these parties in Illinois and Missouri were completed. There is no indication from the record, however, as to whether this motion was ever heard. Rather, the circuit court entered a detailed order on July 20, 2020, indicating that the "[p]arties appeared for a motion hearing" on July 9, 2020.

¶ 14    In its July 20, 2020, order, the circuit court denied Roger's motion for partial summary judgment and granted Anne's and Liza's motions for partial summary judgment. The circuit court found that the Trust terminated upon Mrs. Schlafly's death and requires Roger to distribute the Trust assets outright in equal shares to Mrs. Schlafly's six children. Accordingly, the circuit court ordered Roger to submit an accounting and a proposed schedule of distribution for the Trust assets. On August 14, 2020, Roger filed a notice of interlocutory appeal.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, Roger argues that the circuit court erred in denying his motion to dismiss based on a lack of personal jurisdiction and that the circuit court erred in granting Anne and

Liza's motion for a partial summary judgment, thus requiring him to submit an accounting and proposed schedule of distribution for the Trust assets. We will address each issue in turn.

¶ 17                           A. Personal Jurisdiction

¶ 18    The first argument Roger makes on appeal is that the circuit court's July 20, 2020, order is void for a lack of personal jurisdiction. We begin our analysis of this issue by addressing the applicable standard of review. When addressing the standard of review in his opening brief, Roger, citing *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989), states that, "[w]hen a trial court decides jurisdictional issues after an evidentiary hearing, this [c]ourt's standard of review is whether the decision was against the manifest weight of the evidence." Although this is an accurate statement of the law, we find it to be inapplicable here. While the circuit court granted Anne's motion for a "full evidentiary hearing" on Roger's motion to dismiss, there is no report of proceedings in the record on appeal. Furthermore, there is no indication in the briefs or from the record that the circuit court heard any testimony or considered any evidence other than the documents, pleadings, and affidavits contained within the record. In fact, the July 20, 2020, order states that it was entered after the parties "appeared for a motion hearing" on July 9, 2020.

¶ 19    When the circuit court determines the issue of personal jurisdiction on the pleadings and materials produced during discovery without conducting an evidentiary hearing, our standard of review is *de novo*. *Levy v. Gold Medal Products Co.*, 2020 IL App (1st) 192264, ¶ 26. In such a case, the method of our review has been stated as follows:

> "A plaintiff has the burden of establishing a *prima facie* case for jurisdiction when
> seeking jurisdiction over a nonresident defendant. [Citation.] *** A reviewing court
> addressing a challenge to personal jurisdiction must resolve in favor of the plaintiff any
> conflicts in the pleadings and affidavits [citation]; however, a plaintiff's *prima facie* case

7

for jurisdiction can be overcome by a defendant's uncontroverted evidence that defeats jurisdiction. [Citation.] If we decide that a plaintiff has made a *prima facie* case for jurisdiction over a defendant, we must then determine if a material evidentiary conflict exists. [Citation.] If a material conflict does exist, then we must remand the cause to the trial court for an evidentiary proceeding." *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010).

¶ 20    "Illinois courts may assert personal jurisdiction over a nonresident defendant only if the assertion comports with section 2-209 of the Code (735 ILCS 5/2-209 (West 2010)), known as Illinois' long-arm statute, and with the due process guarantees of both the Illinois and the United States Constitutions." *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 11.[1] The details of a proper analysis of these components of personal jurisdiction over a nonresident defendant were stated by the *Aasonn* court as follows:

"Prior to the enactment in 1989 of the 'catch-all provision' in section 2-209(c), courts analyzed whether the assertion of personal jurisdiction over a nonresident defendant was permitted by the long-arm statute and then separately examined due process concerns. [Citation.] However, because section 2-209(c) is coextensive with state and federal due process requirements, Illinois courts now treat it as an independent basis for exercising personal jurisdiction. [Citation.] Therefore, we need examine only due process considerations under the federal and state constitutions. [Citation.]" *Id.* ¶ 12.

---

[1]In discussing the circuit court's personal jurisdiction over Roger in this case, both parties cite section 202 of the Illinois Trust Code (760 ILCS 3/202 (West Supp. 2019)), which provides that "[b]y accepting the trusteeship of a trust having its principal place of administration in this State ***, the trustee is subject to the jurisdiction of the courts of this State regarding any matter involving the trust." Section 202 of the Illinois Trust Code was not effective until January 1, 2020, well after the date this lawsuit was instituted. For this reason, we will not apply section 202 of the Illinois Trust Code in this case. However, for reasons stated hereafter, this provision is really a codification of common law regarding jurisdiction over trustees, and thus, its application would not alter our analysis.

¶ 21 Roger argues that the circuit court's exercise of jurisdiction over him violates the due process clauses of the Illinois and United States Constitutions. Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV, § 1. However, he does not argue that he is entitled to greater due process protections under the Illinois due process clause than the federal due process clause. Accordingly, we will consider the due process issue solely under the federal due process clause. See *Kaufman v. Barbiero*, 2013 IL App (1st) 132068, ¶¶ 37-38 (citing *Russell v. SNFA*, 2013 IL 113909, ¶ 33).

¶ 22 Under the federal due process clause (U.S. Const., amend. XIV, § 1), a defendant must have certain minimum contacts with a forum state, such that the maintenance of a suit there against the defendant does not offend traditional notions of fair play and substantial justice. *Kaufman*, 2013 IL App (1st) 132068, ¶ 40 (citing *Russell*, 2013 IL 113909, ¶ 34). We evaluate a defendant's contacts with the forum state as follows:

> "Minimum contacts are evaluated differently depending on whether the forum state is seeking to invoke general or specific jurisdiction over the defendant. [Citation.] 'A finding of general jurisdiction permits a cause of action against a defendant based on activity that is entirely distinct from its activity in the forum' and is based on continuous and systemic activity in the forum by the defendant." *Id.* ¶ 41 (quoting *Russell*, 2013 IL 113909, ¶ 36).

¶ 23 In the case at bar, there is no evidence or argument regarding Roger's "continuous and systematic" activities in Illinois. Accordingly, if Illinois can extend jurisdiction over Roger, it is only through specific jurisdiction. Our analysis of specific jurisdiction can be explained as follows:

" 'Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state.' [Citation.] 'Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain "single or occasional acts" in the state but only with respect to matters related to those acts.' (Internal quotation marks omitted.) [Citation.] '[W]hen a nonresident defendant purposefully derives [a] benefit from its interstate activities in other jurisdictions it would be unfair to allow that defendant to avoid any legal consequences that proximately arose from those same activities.' " *Id.* ¶ 42 (quoting *Russell*, 2013 IL 113909, ¶¶ 40, 41).

¶ 24   A written trust has a distinct legal existence and can sue or be sued through its trustee in a representative capacity on behalf of the trust. *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005). Where a trust is administered in Illinois, and litigation arises with reference to that trust, an Illinois court would have specific jurisdiction over the trust and the designated trustee for purposes of that litigation. *Id.* at 1011 (citing *People v. First National Bank of Chicago*, 364 Ill. 262, 268-69 (1936)). In order to determine whether a trust is administered in Illinois, courts consider the following factors: (1) the provisions of the trust instrument, (2) the residence of the trustees, (3) the residence of the beneficiaries, (4) the location of the trust assets, and (5) the location where the business of the trust is to be conducted. *Id.* (citing *First National Bank of Chicago*, 364 Ill. at 268).

¶ 25   Here, Roger argues that the circuit court lacks personal jurisdiction over him in his representative capacity as trustee of the Trust because the Trust is not administered in Illinois. In support of his argument, Roger makes the following points: (1) the Will does not contain a choice of law provision requiring that the Trust be administered under the laws of Illinois,

(2) Roger is not a resident of Illinois, (3) five out of six of the trust beneficiaries reside outside of Illinois, (4) the property constituting the Trust is held in an investment portfolio under an address outside of Illinois, and (5) Roger does not conduct the business of the Trust in Illinois. We are not persuaded by Roger's analysis of these factors because he assesses the facts following John's resignation as trustee, an event that occurred after the filing of Anne's complaint. When assessing specific personal jurisdiction, "the relevant time period begins when the claim arose and extends to the date the lawsuit was filed and service was attempted, with 'the critical point of inquiry [being] the time the defendant was made a party to the suit and was served.' " *Robertsson v. Misetic*, 2018 IL App (1st) 171674, ¶ 23 (quoting *Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 659 (2005)). Accordingly, we must evaluate the factors to determine whether the Trust was being administered in Illinois between the date that Anne's claim for a distribution of Trust assets arose, which is the date Mrs. Schlafly died on September 5, 2016, and the date that Roger was served with Anne's complaint, which, according to the record, was on December 7, 2017.

¶ 26    Beginning with the first factor, Roger is correct in his assertion that the Will that created the Trust contains no provision regarding choice of law and does not provide that the Trust is to be administered in Illinois. However, because the Trust provisions do not specify that the Trust is to be administered in any state, this factor does not weigh against a finding that the Trust is administered in Illinois. An examination of the Will reveals that the only references to any state on the face of the Will is to Illinois. First, the Will states that Mr. Schlafly, the settlor of the Trust and the maker of the Will, resided in Alton. Second, the Will contains a provision granting the trustees the power to "invest any part of the trust funds in property located outside the State of Illinois," from which it can be inferred that the settlor intended the Trust to have a connection to Illinois specifically. Finally, the Trust created by the Will created a testamentary trust and was

11

probated in Illinois. This court has recognized that, unlike *inter vivos* trusts, testamentary trusts are created by the probate of the decedent's will in state court, owing their very existence to the laws and courts of the state of the grantor, thus providing a permanent tie to the state. *Linn v. Department of Revenue*, 2013 IL App (4th) 121055, ¶ 28. For these reasons, we find that the first factor, which requires an examination of the provisions of the Trust, weighs in favor of a finding that Illinois is the state of administration of the Trust.

¶ 27   As to the second factor, at the time Anne filed her complaint, John and Roger were co-trustees of the Trust. Roger resided in California and John resided in Illinois. The fact that one of the trustees resided in Illinois at the time the complaint was filed should be given some weight in determining whether the Trust was administered in Illinois. Regarding the third factor, Roger is correct that John is the only beneficiary who lives in Illinois. As to the fourth factor, at the time of the filing of the complaint, the investment portfolio of the Trust was held under John's address in Illinois. It was not until after the complaint was filed that John resigned and the address for the investment portfolio was changed to Roger's address in California. In addition, all the state tax returns for the Trust that were produced in discovery were filed in Illinois and listed John's address in Illinois.

¶ 28   Finally, as to the fifth factor, the evidence shows that John was conducting much of the business of the trust from his home in Illinois. His address was listed on the checks written on behalf of the Trust, the tax returns for the Trust, and the investment portfolio. While John testified in his discovery deposition that Roger made all the investment decisions for the Trust from his home in California, this does not negate the business that John was conducting from Illinois.

12

¶ 29    Based on the foregoing, we find that the balance of the factors weighs in favor of a finding that, at the time Anne filed her complaint for a distribution of the Trust assets, the Trust was administered in Illinois. As such, the circuit court had personal jurisdiction over the Trust, and thus over Roger in his capacity as trustee. Because this litigation arises from Roger's position as trustee of a Trust administered in Illinois, Roger has minimum contacts with Illinois sufficient to subject him to the specific personal jurisdiction of the Illinois courts. Therefore, this litigation does not violate Roger's due process rights. Accordingly, we will address the propriety of the circuit court's order granting a partial summary judgment to Anne and Liza.

¶ 30                                    B. Summary Judgment

¶ 31    The circuit court granted a partial summary judgment in favor of Anne and Liza, requiring Roger to make an accounting of the assets of the Trust and a schedule of distribution of Trust assets, to include the distribution of a one-sixth share of the assets of the Trust to Anne and a one-sixth share of the assets of the Trust to Liza. Our standard of review for an order granting summary judgment involving the interpretation of a trust document recently has been set forth by this court in *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶¶ 121-124:

> "A trial court is permitted to grant summary judgment only 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration

13

means we perform the same analysis that a trial judge would perform. [Citation.] Summary judgment is appropriate in a case involving the construction of a trust[ ] because the ascertainment of the trust's meaning or intent is strictly a matter of law. [Citation.]

&ast;&ast;&ast;

&ast;&ast;&ast; 'In interpreting trusts, which are construed according to the same principles as wills, the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public policy.' *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009) (citing *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513 (1981)). ' "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills." ' [Citation.]

'When the language of the document is clear and unambiguous, a court should not modify or create new terms.' [Citation.] 'However, where the language of a trust is ambiguous and the settlor's intent cannot be determined, a trial court may rely on extrinsic evidence to aid construction.' [Citation.] Language is ambiguous when it is reasonably susceptible to more than one meaning. [Citation.]"

¶ 32 At the outset, we must determine what law controls the construction on the trust. As provided in section 268 of the Restatement (Second) of Conflict of Laws:

"(1) A will or other instrument creating a trust of interests in movables is construed in accordance with the rules of construction of the state designated for this purpose in the instrument.

(2) In the absence of such a designation, the instrument is construed

14

(a) as to matters pertaining to administration, in accordance with the rules of construction

of the state whose local law governs the administration of the trust, and

(b) as to matters not pertaining to administration, in accordance with the rules of

construction of the state which the testator or settlor would probably have desired to be

applicable." Restatement (Second) of Conflict of Laws, § 268 (1971).

See also *Brown v. Ryan*, 338 Ill. App. 3d 864, 870-71 (2003).

¶ 33    Here, Mr. Schlafly did not designate that the Trust be subject to and construed according

to the laws of Illinois. Accordingly, as to matters of trust administration, we apply the law of the

forum state of Illinois because the trust was subject to administration here. See *id.* at 871. As to

matters of trust construction, we note that the Will that created the Trust was executed and

probated in Illinois, and Illinois is the only state referenced throughout the document.

Accordingly, we will apply the law of the state of Illinois to matters regarding the construction of

the Trust. See *id.*

¶ 34    Having determined that the law of Illinois applies to our construction of the Trust, we

begin our analysis with the language of the Trust. Article III of the Will created the Trust,

providing, in section (b), as follows:

"I give the balance of the residue of my estate not disposed of by the preceding paragraph

(a) to my sons, JOHN SCHLAFLY and ROGER SCHLAFLY as Trustees, to be held and

disposed of as follows. All of the net income of this Trust shall be paid to my wife

PHYLLIS SCHLAFLY at least annually for the remainder of her natural life. In addition,

the Trustees may pay to my wife PHYLLIS so much of the principal of this Trust as the

Trustees in their sole discretion, from time to time, believe is desirable for her care,

maintenance, health and support, in accordance with the standard of living she enjoyed

15

during her lifetime. *On my wife's death, this Trust shall terminate and the balance thereof shall then be disposed of under the terms of this Will as if my wife had not survived me. \*\*\**" (Emphasis added.)

¶ 35    Article IV of the Will provides as follows:

"In the event my wife PHYLLIS SCHLAFLY shall predecease me, then I hereby give, devise and bequeath all of the rest, residue and remainder of my estate, in six equal shares as follows:

(a) One share shall be paid to my wife PHYLLIS SCHLAFLY as Trustee for my daughter ANNE SCHLAFLY. The said Trustee shall apply so much of the income and principal of the trust estate as she shall determine for the benefit of my daughter ANNE, it being my intention that the Trustee shall have absolute discretion in this regard including the power to accumulate income. In the event my wife does not survive me then I appoint my son JOHN SCHLAFLY and my daughter LIZA FORSHAW as Co-Trustees. In the event the Co-Trustees are unable to agree, the decision of my daughter LIZA FORSHAW shall be controlling and binding. In the event either Co-Trustee appointed herein is or becomes unable to serve as such, then I appoint my son ROGER SCHLAFLY as Successor Trustee; and in the event of another vacancy, then I appoint my son ANDREW SCHLAFLY as Successor Trustee. *Said trust shall vest absolutely in my daughter ANNE SCHLAFLY when she reaches the age of 26.*

(b) The other five shares shall be distributed, share and share alike, to my surviving children other than ANNE, namely, JOHN SCHLAFLY, BRUCE SCHLAFLY,

16

ROGER SCHLAFLY, LIZA FORSHAW, and ANDREW SCHLAFLY." (Emphasis added.)

¶ 36    The plain language of these paragraphs makes it clear to this court that the sole purpose for the Trust was to provide for Mrs. Schlafly during her lifetime and that Mr. Schlafly intended that the Trust terminate upon her death and that the assets of the Trust be distributed according to the Will. The distribution provisions of the Will clearly provide that Anne should receive a distribution of her one-sixth share of Mr. Schlafly's estate if she is over the age of 26 years at the time of that distribution. In addition, the Will provides that Liza is entitled to a one-sixth share. The record establishes the fact that Mrs. Schlafly has died and that Anne is over the age of 26. Accordingly, the provisions of the Will and Trust require a distribution of the Trust assets and include a distribution of a one-sixth share of the Trust assets to Anne and a one-sixth share to Liza.

¶ 37    Despite the plain language of the Will and Trust, Roger argues that he has discretion to withhold an accounting and distribution of the assets of the Trust. According to Roger, potential collateral consequences to the assets of the Trust exist because the statute of limitations for Illinois to pursue estate taxes against Mrs. Schlafly's estate has not yet expired. In addition, Roger argues that litigation involving the parties in Illinois and Missouri somehow has the potential to impact the Trust assets and affect the distribution. However, Roger has cited no authority in support of the proposition that, despite a clear termination provision, he has the discretion to withhold Trust assets. The decisions Roger cites in his brief in support of his arguments have nothing to do with a Trust that has terminated by its own terms and, as such, are wholly inapposite.

17

¶ 38    Similarly, Roger has cited no authority relevant to his argument that Anne has violated the spendthrift provision in the Trust by instituting this litigation and/or other litigation in Illinois and Missouri. The spendthrift provision in the Will provides:

> "Neither the principal nor the income of any trust created under this Will shall be liable for the debts of any beneficiary hereunder, nor shall any beneficiary have any power to sell, assign, transfer, encumber or in any other manner anticipate or dispose of his or her interest in the trust estate or in any income therefrom."

¶ 39    According to Roger, because Anne has not been deposed in this matter, he "cannot say with certainty if [Anne's] share has been pledged to satisfy her attorney-creditors." We agree with Anne that Roger cannot use the spendthrift provision to withhold distribution of the assets of the Trust pursuant to the termination provision. "Spendthrift trust provisions restrict the beneficiary's ability to alienate and the beneficiary's creditors' ability to attach the trust corpus." *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 281 (2006). However, because the Trust has terminated, and Anne is entitled to a distribution of the assets, the spendthrift provision is no longer effective because Anne's "unfettered right of control negates any future effect of the spendthrift clause." *Id.*

¶ 40    With respect to Anne's right of distribution, Roger argues that the circuit court erred in granting Anne's motion for partial summary judgment as to count II of her petition because, in addition to requesting a distribution of the Trust assets, Anne requested an award of punitive damages. We disagree. Anne did not request that the circuit court rule on her request for punitive damages in her motion for partial summary judgment, and the circuit court did not award punitive damages in the order on appeal. Section 2-1005 of the Code (735 ILCS 5/2-1005 (West

18

2016)) allows for the circuit court to enter an order granting summary judgment as to "any part of the relief sought."

¶ 41 Finally, regarding that part of the order that granted summary judgment in favor of Liza, Roger argues that Liza is not entitled to such relief because she did not file a petition for a distribution of the assets of the Trust. This is also incorrect, as Liza was named as a necessary party to this action and is entitled to distribution of her share of the Trust assets based on the circuit court's summary determination of the issue of the termination of the Trust. See *id.* § 2-1005(d). For these reasons, the circuit court did not err in granting Anne's and Liza's motions for partial summary judgment and in ordering Roger to account for and submit a schedule for distribution of the assets of the Trust, including a one-sixth share of the Trust assets to Anne and a one-sixth share to Liza.

¶ 42                               III. CONCLUSION

¶ 43 For the foregoing reasons, we affirm the July 20, 2020, order of the circuit court of Madison County, which granted a partial summary judgment in favor of Anne and Liza, requiring Roger to make an accounting of the Trust assets and to submit a proposed schedule for distribution of those assets, including one-sixth to Anne and one-sixth to Liza.

¶ 44 Affirmed.

**No. 5-20-0246**

| | |
|---|---|
| **Cite as:** | *Cori v. Schlafly*, 2021 IL App (5th) 200246 |
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 17-CH-612; the Hon. Sarah D. Smith, Judge, presiding. |
| **Attorney for Appellant:** | Laura E. Schrick, of Mathis, Marifian & Richter, Ltd., of Belleville, for appellant. |
| **Attorneys for Appellee:** | Ann E. Callis, of Holland Law Firm, of Granite City, and Matthew J. Rossiter, Timothy J. Lemen, and Maxwell G. Murtaugh, of Rossiter & Boock, LLC, of St. Louis, Missouri, for appellee Anne Schlafly Cori. |
| | Kelley F. Farrell, of Capes, Sokol, Goodman & Sarachan, P.C., of St. Louis, Missouri, for other appellee. |