2021 IL App (1st) 200032

FIFTH DIVISION
MARCH 26, 2021

Nos. 1-20-0032 & 1-20-0191 Consolidated

| | | |
|---|---|---|
| KEVIN HERNANDEZ and ANDREA RODRIGUEZ, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| BRANDON OLIVEROS; SALVADOR OLIVEROS; GMAX, LLC, a Limited Liability Company, a/k/a GMA Helmet, LLC; WESTERN POWER SPORTS, INC., an Idaho Corporation; and REVZILLA MOTORSPORTS, LLC, a Limited Liability Company, | ) ) ) ) ) ) ) ) | No. 18 L 11304 |
| Defendants | ) ) | Honorable John H. Ehrlich, |
| (GMAX, LLC, Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant-appellant, GMAX, LLC (GMAX), filed a motion to dismiss a products liability action brought by the plaintiffs-appellees, Kevin Hernandez and Andrea Rodriguez, on the basis of lack of personal jurisdiction. The circuit court of Cook County denied the motion, and GMAX now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    This matter arises out of an accident that occurred on October 18, 2016. Mr. Hernandez was driving a motorcycle southbound on Archer Avenue in Chicago, and Ms. Rodriguez was riding as the passenger. Mr. Hernandez was wearing a model 68S GMAX motorcycle helmet, and Ms. Rodriguez was wearing a model 69S GMAX motorcycle helmet. At the same time, Brandon Oliveros was also driving southbound on Archer Avenue in his Ford Explorer. He passed Mr. Hernandez and Ms. Rodriguez and abruptly made a U-turn in front of them. The motorcycle collided with the driver's side of the Explorer. Mr. Hernandez and Ms. Rodriguez suffered severe injuries, including head injuries.

¶ 4    On October 17, 2018, Mr. Hernandez and Ms. Rodriguez filed a complaint against Brandon Oliveros; his father, Salvador Oliveros, who owned the Ford Explorer; GMAX; Western Power Sports, Inc. (WSP); and RevZilla Motorsports, LLC (RevZilla).[1] Specific to GMAX, WSP, and RevZilla, Mr. Hernandez and Ms. Rodriguez alleged strict products liability based on manufacturing defects and failure to warn concerning the GMAX helmets they were wearing at the time of the accident. The complaint asserted that GMAX is an Idaho-based limited liability company, "doing business throughout the United States including Illinois," that WPS is an Idaho corporation that is "a manufacturer and/or distributor of GMAX products," and that RevZilla "is a Delaware[-]based limited liability company doing business in Illinois, and is a distributor of GMAX products."

¶ 5    On February 21, 2019, GMAX filed a motion to dismiss for lack of jurisdiction pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2018)). GMAX's motion to dismiss argued that Illinois lacks personal jurisdiction over it because it has no

_____

[1]GMAX is the only defendant that is a party to this appeal.

connection to Illinois. The motion claimed that GMAX is incorporated in Michigan with its principal place of business in Idaho. The motion further stated that GMAX "brands and markets motorcycle helmets," including the models worn by Mr. Hernandez and Ms. Rodriguez at the time of the accident, but that it "has not undertaken any marketing or branding activities in Illinois or directed toward Illinois residents." GMAX additionally stated in its motion that it does "not design, manufacture, sell or distribute the motorcycle helmets [Mr. Hernandez and Ms. Rodriguez] were allegedly wearing, as it does not design, manufacture, sell or distribute any products."

¶ 6      GMAX attached an affidavit from Dan Lopez, the senior vice president of product management for WPS and GMAX's "representative for legal matters," including the instant case. Mr. Lopez's affidavit stated that GMAX did not design or manufacture the helmets worn by Mr. Hernandez and Ms. Rodriguez. (GMAX later filed a reply memorandum in support of its motion to dismiss clarifying that the helmets at issue were manufactured by An Yng Enterprises (An Yng), a Taiwanese company.) Mr. Lopez's affidavit concluded by stating that GMAX has never had any customers in Illinois and "has no connection to the State of Illinois with respect to the motorcycle helmets alleged in the [c]omplaint." WPS subsequently filed its own, separate motion to dismiss for lack of personal jurisdiction.

¶ 7      On October 28, 2019, Mr. Hernandez and Ms. Rodriguez responded to GMAX's motion to dismiss for lack of jurisdiction. Their response stated that they purchased both helmets through RevZilla, which is an online, authorized retailer for GMAX products. While the 68S model GMAX helmet purchased by Mr. Hernandez was shipped through RevZilla, the 69S model GMAX helmet was shipped directly from WPS to Mr. Hernandez at his home address in Chicago. Mr. Hernandez and Ms. Rodriguez argued that Illinois does have personal jurisdiction over GMAX because, *inter alia*: GMAX participated in the design of GMAX helmets, GMAX has authorized retailers

in Illinois to sell its products, GMAX has an exclusive distribution agreement with An Yng and WPS, WPS is a member of GMAX, and their injuries arose out of using GMAX's products in Illinois.

¶ 8    In its reply memorandum in support of its motion to dismiss, GMAX asserted that its involvement in the design of the helmets is limited to "helmet aesthetics." Although it acknowledged that WPS is the sole distributor of its products, GMAX alleged that it had no involvement in the sale of the helmets purchased by Mr. Hernandez. GMAX further rejected the assertion that RevZilla is one of its authorized retailers and argued that it has no association or affiliation with RevZilla. GMAX ultimately argued that it did not have sufficient contacts with Illinois to meet the standard for personal jurisdiction and that the activities of third parties, such as WPS and RevZilla, cannot be imputed to GMAX for the purposes of establishing jurisdiction.

¶ 9    On December 9, 2019, the trial court held a hearing on GMAX's and WPS's motions to dismiss. During the hearing, the trial court ascertained that both GMAX and WPS are nonresidents of Illinois and so Mr. Hernandez and Ms. Rodriguez have the burden of establishing a *prima facie* basis to exercise personal jurisdiction over them. The trial court further noted that it was permitted to consider "any allegations in the complaint, any affidavits, or any other papers submitted by the parties" and that any conflicts in the pleadings must be resolved in favor of Mr. Hernandez and Ms. Rodriguez. Noting that its analysis was guided by *Aspen American Insurance Co. v. Interstate Warehousing*, *Inc.*, 2017 IL 121281, the trial court found that general jurisdiction did not exist in this case because neither GMAX nor WPS has "continuous and [systematic] contacts with Illinois, such that either could be considered at home in Illinois."

¶ 10    However, citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the trial court found that specific jurisdiction existed based on the broad stream-of-commerce theory. In so

finding, the trial court emphasized that WPS is a wholesale distributor of GMAX helmets with authorized retailers throughout the United States, including two in the Chicago area. The trial court also noted that WPS estimates that its annual revenue is approximately $6 million for sales in the state of Illinois. Additionally, the trial court stressed that WPS shipped the 69S model GMAX helmet directly to Mr. Hernandez, and that the helmets' labels indicate that WPS is the manufacturer.

¶ 11    The trial court acknowledged that WPS is a member of GMAX but stated that it was unclear "exactly what [the] relationship is between WPS and GMAX." However, the trial court put that question "to the side" because it found the facts sufficient to establish specific jurisdiction over both GMAX and WPS. The trial court accordingly denied GMAX's and WPS's motions to dismiss for lack of jurisdiction. GMAX subsequently appealed.

¶ 12                                    ANALYSIS

¶ 13    We note that we have jurisdiction to consider this interlocutory appeal, as this court granted GMAX leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2019).[2]

¶ 14    GMAX presents the following sole issue: whether the trial court erred in denying its motion to dismiss for lack of jurisdiction. GMAX argues that the trial court erred in finding that specific jurisdiction exists in this case based on the broad stream-of-commerce theory, claiming that is not the prevailing law in Illinois. GMAX also claims that Mr. Hernandez and Ms. Rodriguez failed to meet their burden of establishing personal jurisdiction because they did not show that GMAX has

---

[2]GMAX originally filed, in this court, a motion for an extension of time to file its petition for leave to appeal under case No. 1-20-0032. When GMAX subsequently filed its petition for leave to appeal, however, it was "inadvertently" filed under case No. 1-20-0191, instead of the original case number given to its motion for an extension of time. This court subsequently consolidated the two cases and allowed GMAX to convert its petition for leave to appeal under case No. 1-20-0032, the original case number.

minimum contacts with Illinois. GMAX avers that the actions of unrelated third parties, including WPS, cannot be attributed to it for purposes of finding personal jurisdiction.

¶ 15    It is well settled that the plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. Where, as here, the trial court decides a jurisdictional question solely on documentary evidence, without an evidentiary hearing, our review is *de novo. Id.* During our *de novo* review, any conflicts in the pleadings and affidavits will be resolved in the plaintiff's favor, except where the defendant overcomes the plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction. *Id.*

¶ 16    Personal jurisdiction refers to a court's power to bring a party into its adjudicative process. *Aspen American Insurance Co.*, 2017 IL 121281, ¶ 26. Illinois courts may assert personal jurisdiction over a nonresident defendant if the assertion comports with section 2-209 of the Code (735 ILCS 5/2-209 (West 2018)). Such exercise of jurisdiction is known as the Illinois long-arm statute. *Cori v. Schlafly*, 2021 IL App (5th) 200246, ¶ 20. "The Illinois long-arm statute contains a 'catch-all provision' which permits Illinois courts to exercise personal jurisdiction to the full extent allowed by the state and federal constitutions." *Kowal v. Westchester Wheels, Inc.*, 2017 IL App (1st) 152293, ¶ 16. Accordingly, if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the Illinois long-arm statute requirements are satisfied, and no further inquiry is necessary. *Id.* GMAX does not argue that it is entitled to greater due process protections under the Illinois due process clause than the federal due process clause, and neither party contends that there is a difference between Illinois due process and federal due process. So, we will consider the due process issue solely under the federal due process clause. *Cori*, 2021 IL App (5th) 200246, ¶ 21; *Kowal*, 2017 IL App (1st) 152293, ¶ 17. Further, as our

supreme court has explained, it is unlikely that a federal due process analysis will differ from Illinois due process analysis since there have been no decisions from this court or our supreme court identifying any substantive differences. *Russell*, 2013 IL 113909, ¶ 32. Under a federal due process analysis, courts are required to consider whether: (1) the nonresident defendant had minimum contacts with the forum state such that the defendant was fairly warned that it may be haled into court there; (2) the action arose out of or was related to the defendant's contacts with the forum state; and (3) it is reasonable to require the defendant to litigate in the forum state. *Kowal*, 2017 IL App (1st) 152293, ¶ 17.

¶ 17 Turning first to determine whether GMAX had minimum contacts with Illinois, we must consider whether the forum asserts general or specific jurisdiction. *Id.* ¶ 21. General jurisdiction exists only when the minimum contacts requirement has been satisfied by the defendant's *continuous and systematic contacts* with the forum state as to render them essentially at home in the forum state. *Id.* Specific jurisdiction exists when the defendant has *purposefully directed* its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state. *Id.* As the parties do not dispute that general jurisdiction does not exist in this case, the scope of our review is limited to specific jurisdiction.

¶ 18 "One way to satisfy the requirements for specific jurisdiction is under the stream-of-commerce theory ***." *Id.* ¶ 22 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). The case law surrounding the stream-of-commerce theory is unsettled, and there are currently two competing standards. *Id.* ¶¶ 27, 34. Under the *broad* stream-of-commerce theory, the forum state can assert personal jurisdiction over a nonresident defendant as long as the defendant is involved in the regular and anticipated flow of products and is aware that the final product is being marketed in the forum state. *Id.* ¶ 35 (citing *Asahi Metal Industry Co. v. Superior*

*Court of California*, 480 U.S. 102, 117 (1987) (Brennan, J., specially concurring, joined by White, Marshall and Blackmun, JJ.)). Conversely, the *narrow* stream-of-commerce theory requires *additional conduct* that is beyond merely placing products into the stream of commerce and knowing that the products will make their way to the forum state. *Id.* ¶ 24 (citing *Asahi Metal Industry Co., Ltd.*, 480 U.S. at 112 (O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.)).

¶ 19    The Illinois Supreme Court has declined to adopt either the broad or narrow version of the theory without more definitive guidance from a majority of the United States Supreme Court. *Russell*, 2013 IL 113909, ¶ 71. However, our supreme court has deciphered three points from the United States Supreme Court case, *J. McIntyre Machinery, Ltd.*, 564 U.S. 873. *Russell*, 2013 IL 113909, ¶ 67. First, the stream-of-commerce theory is valid, even though the proper standard is not yet settled. *Id.* Second, specific jurisdiction should not be exercised based on a *single sale* in a forum state, even where the defendant knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states. *Id.* ¶ 68. And third, a minority of the United States Supreme Court believes that a broader stream-of-commerce theory should be applied to adapt to modern globalized commerce and is warranted under *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945). *Russell*, 2013 IL 113909, ¶ 69.

¶ 20    Seeing that the stream-of-commerce theory is not settled in Illinois, we are guided in our analysis by *Kowal*, 2017 IL App (1st) 152293. In *Kowal*, the plaintiff filed a strict liability action against the defendant, Giant Manufacturing, after she sustained an injury while using a bicycle manufactured by the defendant. *Id.* ¶ 1. The defendant filed a motion to dismiss for lack of jurisdiction, arguing that it lacked the requisite minimum contacts with Illinois. *Id.* ¶ 10. As part

of its argument, the defendant asserted that it is a Taiwanese corporation, that its subsidiary distributed its products throughout the United States, and that a separate Illinois corporation, which was an authorized retailer of Giant brand bicycles, sold the bike to the plaintiff. *Id.* ¶ 3. The trial court denied the defendant's motion to dismiss. *Id.* ¶ 10. On appeal, this court affirmed the trial court's finding that specific jurisdiction existed in that case under either the broad or narrow stream-of-commerce theory. *Id.* ¶ 40. In so ruling, we noted that, even though the defendant was not the distributor or seller of its products, there was ample evidence that the defendant was aware that its products were being marketed in Illinois and that it had purposefully availed itself of the Illinois market, including the fact that it had authorized retailers throughout the state. *Id.* ¶¶ 37-38.

¶ 21     Similarly, here, GMAX makes much of the fact that other companies manufactured, distributed, and sold the helmets at issue. That is irrelevant, however, as the record establishes that the helmets are GMAX products and that GMAX was *aware* that its products were being marketed and sold *in Illinois*. And while it is true a defendant's mere knowledge that the stream of commerce may sweep its product into the forum state may be insufficient to establish minimum contacts, that is not the situation here considering that there are *authorized retailers* for GMAX products throughout Illinois. See *Asahi Metal Industry Co.*, 480 U.S. at 112 (O'Connor, J., joined by Rehnquist, C.J., and Powell and Scalia, JJ.) (additional conduct of the defendant, such as marketing the product through a distributor or sales agent, may indicate an intent or purpose to serve the market in the forum state). Moreover, it is immaterial if, as GMAX avers, the retailers are authorized through WPS, since WPS is GMAX's sole distributor and is responsible for distributing GMAX's products through retailers.

¶ 22     GMAX argues that *Kowal* is distinguishable because, in that case, the defendant's distributor was its subsidiary; whereas WPS is a separate entity from GMAX. Since we are looking

to *Kowal* for guidance, we find this argument to be without merit, as we did not consider that fact in our analysis. Indeed, the special concurrence in that case specifically clarified that, beyond finding that the defendant had minimum contacts with the state, Illinois would have personal jurisdiction over the defendant in any event because of the defendant's corporate structure and the fact that it controlled the distribution through its subsidiary. *Kowal*, 2017 IL App (1st) 152293, ¶ 52 (Gordon, J., specially concurring).

¶ 23    Further, this finding does not impute or attribute WPS's activity to GMAX. A party's purposeful availment need not be direct. *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 171. The purposeful availment requirement can be achieved through another entity, as long as the other entity makes contact with the forum state *bilaterally* rather than *unilaterally*. *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Bilateral acts can occur when two parties have a business relationship or contractual understanding that contemplates one party's acting for the benefit of both in the forum state. *Id.* Such a situation exists in this case, as WPS was GMAX's sole distributor and distributed its products on GMAX's behalf throughout North America, including Illinois. Finding that GMAX purposefully availed itself of the benefits of the Illinois market through its business relationship with WPS is not the same as *imputing* WPS's unilateral activities to GMAX.

¶ 24    If we were to accept GMAX's argument that it cannot have minimum contacts with Illinois because third parties distributed and sold its products in this state, that would allow GMAX to have its cake and eat it, too. Stated another way, it would permit GMAX to avail itself of the benefits of the Illinois market while simultaneously exempting it from being haled into the Illinois court system when a product failed merely because the product had been distributed and sold through a third party. Thus, we find that GMAX has the requisite minimum contacts with Illinois through

both the narrow and broad stream-of-commerce theories.

¶ 25    Having determined that GMAX has the requisite minimum contacts with Illinois, the next consideration in our analysis is whether Mr. Hernandez and Ms. Rodriguez demonstrated that the cause of action arose out of or was related to GMAX's contacts with Illinois. It is clear that, since this action arises out of their *purchase* and *use* of the helmets *in Illinois*, this requirement has been met. See *Robillard v. Berends*, 371 Ill. App. 3d 10, 18-19 (2007) (if a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts).

¶ 26    Finally, we must consider whether it would be reasonable to require GMAX to litigate in Illinois.

> "The factors to consider when deciding reasonableness include: (1) the burden imposed on the defendant by requiring it to litigate in a foreign forum; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining relief; and (4) the interests of the other affected forums in the efficient judicial resolution of the dispute and advancement of substantive social policies." *Russell*, 2013 IL 113909, ¶ 87.

¶ 27    Illinois undoubtedly has a strong interest in resolving litigation when its citizens suffer injuries caused by products distributed and sold here; and its citizens have a strong interest in having an accessible forum in which to seek relief for those injuries. Illinois cannot protect those interests unless it asserts jurisdiction over the foreign corporations that distribute and sell their products here, even when done so through a third party. Considering that Mr. Hernandez and Ms. Rodriguez are Illinois residents, who suffered head injuries in an accident in Illinois; and who purchased the helmets at issue in Illinois; and that their purchase was not a *single*, *isolated* sale of a GMAX product in Illinois; it necessarily follows that it is logical and fair to resolve this matter

in the Illinois court system. A finding to the contrary would require Mr. Hernandez and Ms. Rodriguez to litigate this case in a distant forum at the convenience of GMAX.

¶ 28    We conclude that it is reasonable for Illinois to exercise personal jurisdiction over GMAX. Accordingly, we affirm the trial court's order denying GMAX's motion to dismiss for lack of jurisdiction.

¶ 29                                CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.

**No. 1-20-0032**

| | |
|---|---|
| **Cite as:** | *Hernandez v. Oliveros*, 2021 IL App (1st) 200032 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-11304; the Hon. John H. Ehrlich, Judge, presiding. |
| **Attorneys for Appellant:** | Nicholas J. Parolisi Jr., Jason E. Hunter, and Brian C. Hoppe, of Litchfield Cavo LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | A. Fredrick Chapekis, of Chapekis, Chapekis & Schmidt Law Group, LLP, of Chicago, for appellees. |